[No. C.D. 4779.   En Banc.   January 20, 1983.]

*In the Matter of the Disciplinary Proceeding
Against* DINO S. BATALI, *an
Attorney at Law.*

*McGavick, Heller, Pressentin, Dubitzky & Grey,* by *Donald H. McGavick,* for petitioner.

*Robert T. Farrell,* for Bar Association.

WILLIAMS, C.J.—Dino S. Batali seeks reinstatement to his right to practice law in the state of Washington. He was admitted to the Washington State Bar Association in 1957 and was disbarred in 1975. After a hearing on his petition for reinstatement, the Board of Governors recommended, by a 7-to-1 vote, that Mr. Batali be reinstated subject to the condition that he repay federal tax obligations dis-

charged in bankruptcy. For the reasons set forth below, we grant Mr. Batali's petition for reinstatement subject to the conditions stated herein.

The nature and circumstances of the conduct which gave rise to Mr. Batali's disbarment are recounted in some detail in *In re Batali*, 85 Wn.2d 246, 533 P.2d 843 (1975). Those matters need not be repeated here. It is sufficient to say the same misappropriation of client trust funds that caused Mr. Batali's disbarment also resulted in the filing of five counts of grand larceny and one count of first degree forgery against him. He entered pleas of guilty to all six counts and was sentenced to prison for those crimes.

As a result of Mr. Batali's conduct, the Washington State Bar Association Clients' Security Fund paid nine claims totaling $11,714.26. A settlement was negotiated with Puget Sound National Bank, the party ultimately liable on Mr. Batali's bad debts, in which the Clients' Security Fund recovered $10,274.99 of that money. The net recovery to the Clients' Security Fund after paying attorney fees was $6,850, leaving a net loss of $4,864.26.

The most substantial misappropriations by Mr. Batali were not reimbursed by the Clients' Security Fund. Those losses were made good by third parties who in turn obtained judgments against Mr. Batali. Puget Sound National Bank holds judgments totaling $31,449.99; Farmers Insurance Group holds a judgment for $4,275.20; and Hartford Insurance Company holds a judgment for $3,553.

In December of 1981, Mr. and Mrs. Batali filed a joint petition for bankruptcy listing total debts of $127,769.39. Included within that list of debts were obligations owed to Puget Sound National Bank, Farmers Insurance Group, and the Hartford Insurance Company—all creditors of Mr. Batali as a result of his misappropriation of client funds. Also listed were income taxes due the United States for tax years 1972 through 1976 totaling $40,415.84, again as a result of his income realized by embezzling client funds. According to Mr. Batali, he was forced to seek bankruptcy because of the unwillingness of the Internal Revenue Serv-

ice to accept any payment plan short of immediate and full payment of the entire $40,415.84 tax obligation. On May 17, 1982, the bankruptcy court entered an order discharging all listed debts of Mr. and Mrs. Batali, including those directly attributable to his misappropriation of client funds. Despite the fact that under 11 U.S.C. § 523(a)(4) (Supp. 2, 1978), a debt is not dischargeable in bankruptcy if it is a debt involving "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny", such debts are discharged under the order of discharge of debtor, which provides in part:

> 2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:
>
> . . .
>
> (b) unless heretofore determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4) and (6) of 11 U.S.C. § 523(a).

Hearing on Petition for Reinstatement before Board of Governors, July 17, 1982, record, Vol. 2, at I–16. Since the bankruptcy court did not determine the debts to be non-dischargeable, they were discharged by the court's order.

Shortly after the order of discharge of debtor was filed, Mr. Batali petitioned the bankruptcy court to permit him to reaffirm the obligations he owed to all parties except the United States government for income tax liabilities. On June 23, 1982, the bankruptcy court denied the petition except as to one debt owed to a secured creditor. Thereafter, Mr. Batali sought a reconsideration of the court's order denying reaffirmation. The Batalis entered into a stipulation for reaffirmation of indebtedness with Puget Sound National Bank, Farmers Insurance Group, and the Hartford Insurance Company and filed the document with the bankruptcy court. On August 30, 1982, the bankruptcy judge signed an order permitting reaffirmation of the above obligations. Mr. Batali is now legally obligated to repay those debts attributable to his misappropriation of client

funds with the exception of the income tax obligations.

In accordance with an earlier recommendation of the Board of Governors, Mr. Batali and his counsel presented a satisfactory plan for repayment of restitution of all debts attributable to his misconduct except the income tax obligation. The Board of Governors, by a 7–to–1 vote, recommended Mr. Batali's reinstatement to bar membership with the following proviso:

> This recommendation is made upon the Board's understanding of Mr. Batali's intention to reaffirm the payment of his outstanding financial obligations on the basis of the plan of restitution submitted to the Board under date of August 24, 1982, *plus the ultimate repayment of Internal Revenue Service obligations/taxes relating to the embezzled funds in question;*

(Italics ours.) Order Recommending Reinstatement of September 22, 1982. Mr. Batali objects only to the above italicized language recommending repayment of federal tax liabilities previously discharged in bankruptcy.

█ The major consideration in reinstatement proceedings is "whether the petitioner has affirmatively shown that he has overcome those weaknesses that produced his earlier misconduct." *In re Johnson,* 92 Wn.2d 349, 350, 597 P.2d 113 (1979). We specifically have enumerated eight criteria to be used in assessing a petition for reinstatement:

> (a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and (h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement.

*In re Eddleman,* 77 Wn.2d 42, 44, 459 P.2d 387, 461 P.2d 9 (1969). *Accord, In re Egger,* 93 Wn.2d 706, 708, 611 P.2d

1260 (1980); *In re Johnson, supra* at 351. These criteria are intended to implement the requirements of DRA 8.6(a) that an applicant for reinstatement show "that his or her reinstatement will not be detrimental to the integrity and standing of the Bar and the administration of justice, or be contrary to the public interest." In applying these eight criteria to Mr. Batali's case, the Board of Governors concluded Mr. Batali favorably demonstrated his renewed fitness to practice law. We believe the record amply supports the Board of Governors' recommendation of reinstatement.

Prior to his disbarment, Mr. Batali was very active in the Tacoma community and engaged in numerous civic and charitable activities. He was active in local politics and in the Washington State Trial Lawyers Association, serving as vice–president of that organization from 1968 to 1969. The letters of recommendation submitted on Mr. Batali's behalf indicate he was a well respected member of the community and profession prior to his misconduct and show a belief that he will again assume such a position upon reinstatement to the practice of law.

As to the ethical standards observed by Mr. Batali in the practice of law prior to the events which led to his disbarment in 1975, there is no indication of previous misconduct or any allegation of unprofessional behavior.

The nature and character of Mr. Batali's misconduct certainly were serious matters. The theft of client trust funds and forgery of an endorsement on a check are matters contrary to all standards of professional responsibility. While the offenses for which Mr. Batali was disbarred were serious, he has served 8 months in prison, approximately 4 additional years on parole, and was suspended and ultimately disbarred from the practice of law for in excess of 8 years. This has been sufficient punishment.

Since his release from prison, Mr. Batali has worked in a position of responsibility with the Tacoma Urban League. He has continued his community service work through the Urban League and other local organizations.

The Board of Governors found him to be frank and truthful in discussing the matters relating to his disbarment and reinstatement. Though not conclusive, considerable weight is to be given the findings of the Board of Governors. *In re Simmons,* 81 Wn.2d 43, 45, 499 P.2d 874 (1972).

As to his current proficiency in the law, Mr. Batali testified that he has received and read the Washington advance sheets since 1979 and, in the summer of 1981, took a refresher course on the law in anticipation of possibly retaking the Washington bar exam.

On the subject of restitution, Mr. Batali initiated attempts to reaffirm those obligations discharged in bankruptcy except as to the federal tax liability. Through his continued efforts, those obligations have been reaffirmed and payment plans have been proposed and implemented to repay those debts arising from his misappropriation of client trust funds.

Most importantly, Mr. Batali has overcome the weaknesses that gave rise to his initial misconduct. Most of his earlier problems seem to have stemmed from his abuse of alcohol. According to the testimonies of his wife and himself, that problem no longer exists. Throughout this ordeal, Mr. Batali's wife and children have remained supportive of him and apparently are now his motivation for continuing his full rehabilitation.

In conclusion, it would seem fair to say Mr. Batali's conduct and lifestyle since his release from prison have been exemplary. He has shown sufficient progress toward complete rehabilitation so as to merit reinstatement to the practice of law under the eight criteria of *Eddleman.* The only remaining issue is whether Mr. Batali's reinstatement should be subject to certain conditions.

The Board of Governors recommended that, as a condition of his readmission to the practice of law, Mr. Batali be required to make restitution to the United States government for the $40,415.84 in income taxes discharged in bankruptcy. The bar association contends that to do otherwise would be detrimental to the public image and reputa-

tion of the bar and would allow Mr. Batali to profit from his wrongful acts.

The issue of whether a court can require the repayment of federal tax liabilities discharged in bankruptcy as a condition of reinstatement to the practice of law appears to us to be a matter of first impression not only in Washington, but in the entire country. This is probably due to the fact that obligations incurred by fraud, embezzlement, or larceny generally are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(4) (Supp. 2, 1978). The dischargeability of those debts, however, is not an issue before this court and cannot be relitigated here. Our decision deals only with the propriety of requiring the repayment of that debt which was, in fact, discharged in bankruptcy.

■ Although there are no cases directly in point to the one before us, there have been a few analogous cases involving an initial applicant to the state bar having discharged debts in bankruptcy. The conduct of a bar applicant in satisfying his or her financial obligations has been recognized as a relevant factor in assessing the applicant's good moral character. *See In re Heller,* 333 A.2d 401 (D.C.), *cert. denied,* 423 U.S. 840, 46 L. Ed. 2d 59, 96 S. Ct. 70 (1975); *In re Cheek,* 246 Or. 433, 425 P.2d 763 (1967). The failure of a person to honor his or her legal commitments may adversely reflect on that person's ability to practice law, evincing a disregard for the rights of others. *See In re Connor,* 265 Ind. 610, 358 N.E.2d 120 (1976). *See generally* Annot., *Failure To Pay Creditors as Affecting Applicant's Moral Character for Purposes of Admission to the Bar,* 4 A.L.R.4th 436 (1981).

In *In re Gahan,* 279 N.W.2d 826, 4 A.L.R.4th 426 (Minn. 1979), the Minnesota Supreme Court recognized that the fact of filing bankruptcy or the refusal to reinstate obligations discharged in bankruptcy cannot be the basis for denial of admission to the bar; any refusal so grounded would violate the supremacy clause of the United States Constitution. *Gahan,* at 828. This conclusion was dictated by the decision of the United States Supreme Court in

*Perez v. Campbell,* 402 U.S. 637, 29 L. Ed. 2d 233, 91 S. Ct. 1704 (1971). In that case, the Court struck down a state statute which precluded a person from driving if he had an unsatisfied judgment arising out of an automobile accident. In effect, the statute required the reaffirmation of discharged bankruptcy debts. The Supreme Court reasoned that the effect of the statute was to coerce the person into paying a discharged debt, and such coercion contravened the bankruptcy act's objective of giving debtors "'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" (Citations omitted.) *Perez,* at 648.

The Minnesota court reasoned that while requiring the reaffirmation of a discharged debt is contrary to federal law as stated in *Perez,* it could still examine the underlying circumstances of the filing of the bankruptcy petition to assess the applicant's good moral character. *Gahan,* at 829. *Accord, Florida Bd. of Bar Examiners re Groot,* 365 So. 2d 164 (Fla. 1978); *Florida Bd. of Bar Examiners. Re: G.W.L.,* 364 So. 2d 454 (Fla. 1978). The court went on to determine that a law applicant who flagrantly disregards the rights of others and defaults on serious financial obligations is lacking in good moral character if the default is neglectful, irresponsible, and cannot be excused by compelling hardship reasonably beyond the applicant's control. *Gahan,* at 831. Mr. Gahan was denied admission under this test because he discharged student loans in bankruptcy despite his ability to easily satisfy his legal and moral obligations for repayment out of his more than adequate salary.

The present case seems to be controlled by *Perez,* since any requirement that Mr. Batali repay debts discharged in bankruptcy would similarly contravene the federal policy of giving discharged debtors a fresh start. Further, Mr. Batali's case is distinguishable from *Gahan* in that Mr. Batali was forced to seek bankruptcy because of insufficient funds to immediately satisfy the full income tax obligation and because Mr. Batali has now voluntarily reaffirmed the other debts arising from his misconduct. Since any required

repayment of the income tax obligations discharged in bankruptcy would be contrary to the United States Supreme Court's opinion in *Perez,* we will not impose that condition on Mr. Batali's reinstatement.

We believe a different treatment is warranted, however, as to those debts voluntarily reaffirmed by Mr. Batali which are attributable to his earlier misappropriation of client trust funds. While we have determined that Mr. Batali has made an adequate showing that he is reformed and is again fit to practice law, we still must be mindful of the requirements for reinstatement of DRA 8.6(a). As noted above, we must be satisfied that Mr. Batali's reinstatement

> will not be detrimental to the integrity and standing of the Bar and the administration of justice, or be contrary to the public interest.

DRA 8.6(a). We believe a requirement of reasonable progress toward complete and full restitution of those debts owed to Puget Sound National Bank, Farmers Insurance Group, and the Hartford Insurance Company as a result of Mr. Batali's misconduct is necessary to protect the integrity and standing of the bar and is in the best interests of the public. In order to preserve public confidence in the legal profession, we think it is necessary for those who abuse the trust reposed in them as attorneys to be held accountable for their actions. This includes professional discipline as well as the paying of restitution whenever possible. Therefore, upon the suggestion of Mr. Batali's counsel, we shall specifically condition his reinstatement to the practice of law on reasonable progress toward full restitution of the obligations reaffirmed after bankruptcy. Our decision to condition Mr. Batali's reinstatement upon compliance with his plan for making full restitution of the above debts is consistent with *Perez,* in that those voluntarily reaffirmed debts are now legally enforceable obligations.

Given the unusual circumstances of this case, we believe it is necessary to monitor Mr. Batali's progress in following his plan for making full restitution to the creditors named above. Therefore, we direct the bar association to continue

to oversee Mr. Batali's repayment schedule and to work with Mr. Batali and his creditors in assuring reasonable progress in repaying those debts attributable to his earlier misappropriation of client trust funds. If at any time after his reinstatement to the practice of law Mr. Batali fails to maintain reasonable progress toward his plan of full restitution, the bar association shall refer the matter to this court for further disciplinary action.

It is hereby ordered that, upon successful completion of the bar examination, Dino S. Batali shall be readmitted to the practice of law in this state. His readmission shall be subject to the continuing supervision by the bar association of his compliance with the plan for making restitution to those parties injured by his earlier misconduct.

It is so ordered.

STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J., concurs in the result.