[No. 5441.   En Banc.   September 7, 1989.]

*In the Matter of the Disciplinary Proceeding
Against JOSEPH T. MOYNIHAN, an
Attorney at Law.*

*J. Angus Coghill, supra* for petitioner.

*Robert D. Welden,* for Bar Association.

DORE, J.—Joseph T. Moynihan was disbarred by this court in 1982 for misappropriation of client funds. He petitions for reinstatement.

## FACTS

Moynihan was admitted to the Washington State Bar (Bar) in 1973, and engaged in general practice until 1980. At this time, petitioner withdrew from the practice of law. In 1981, Moynihan was suspended from the practice of law for nonpayment of dues. In 1982, he was ordered disbarred for neglect of client matters, misappropriating client funds and failure to cooperate with the disciplinary investigation. *In re Moynihan,* 97 Wn.2d 237, 643 P.2d 439 (1982).

The disciplinary proceeding was based upon complaints from several former clients regarding neglect of legal matters by Moynihan. During the investigation of those matters, the Bar conducted an examination of Moynihan's trust accounts, which disclosed misappropriations of client funds totaling approximately $5,100 from October 1978 through June 1980. In attempts to repay his account, Moynihan deposited approximately $5,900 into the trust account before investigation by the Bar.

Moynihan attributes the conduct which led to his disbarment to excessive alcohol use. He began drinking when he was 14 years old and continued throughout college, his tour in the Navy, his marriage, law school and his practice. It was not until 1980 that Moynihan recognized for the first time that he needed treatment for his alcoholism. In December 1980, Moynihan entered a 6-week inpatient hospitalization at the Veterans Administration Hospital in Tacoma, Washington.

After completion of the program, Moynihan moved to California to begin a new life. During the next 4 years he had no further alcohol counseling or treatment other than occasional meetings of Alcoholics Anonymous (AA). In

1984, Moynihan was introduced to a group of recovering alcoholic attorneys and judges. Soon thereafter he began attending weekly meetings with different groups of recovering lawyers and also began attending weekly Alcoholics Anonymous meetings. To this day he actively participates in regular AA activities.

In November 1988, Moynihan petitioned for reinstatement. The Board of Governors unanimously recommended that Moynihan be reinstated.

## REINSTATEMENT

The major consideration in reinstatement proceedings is whether the disbarred attorney has overcome those weaknesses which produced the earlier misconduct. *In re Butler,* 110 Wn.2d 95, 97, 750 P.2d 641 (1988); *In re Johnson,* 92 Wn.2d 349, 351, 597 P.2d 113 (1979). A petitioner for reinstatement to the Bar must show by clear and convincing evidence that he is rehabilitated, fit to practice, competent and has complied with all applicable discipline orders and rules. *In re Stroh,* 108 Wn.2d 410, 413, 739 P.2d 690 (1987); *In re Johnson, supra* at 350. This court utilizes eight criteria to assess whether to reinstate a disbarred attorney.

> (a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and (h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement.

*In re Eddleman,* 77 Wn.2d 42, 44, 459 P.2d 387, 461 P.2d 9 (1969). These criteria are intended to implement the requirements of RLD 9.6(a) that an applicant for reinstatement show "that his or her reinstatement will not be detrimental to the integrity and standing of the judicial system

or to the administration of justice, or be contrary to the public interest." *See In re Batali*, 98 Wn.2d 610, 657 P.2d 775 (1983).

The Board unanimously found that Moynihan had demonstrated that he met each of the above criteria and recommended that he be reinstated. Where the Board is in a position to see and hear the witnesses and to observe the petitioner's demeanor, the court will give considerable weight to the Board's factual findings. *In re Eddleman, supra* at 45. A review of the record demonstrates that Moynihan has sustained his burden of proof on each of these elements.

A

*Moynihan's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment.*

In applying this criterion, this court reviewed the petitioner's community activities, letters from members of the community regarding character and professional reputation, and the existence of other disciplinary actions. *In re Rosellini*, 108 Wn.2d 350, 356, 739 P.2d 658 (1987). In evaluating the nature of petitioner's life prior to disbarment, this court has looked past the period of time during which the attorney had the problems which led to disbarment. *In re Greenwood*, 22 Wn.2d 684, 157 P.2d 591 (1945). Prior to becoming an alcoholic, Moynihan was routinely appointed by the court to handle criminal, domestic and guardianship proceedings. He also engaged in community projects, which worked to improve county services, did volunteer work and was a member of the Adams County Planning Commission. Petitioner also took part in the staging of community theater productions. In addition, he was active in local politics. Moynihan has demonstrated that, prior to the incident leading to disbarment, his character, standing, and professional reputation in the community were good.

## B
### *The ethical standards which Moynihan observed in the practice of law.*

This inquiry focuses on the attorney's conduct outside of those specific events which led to his disbarment. *In re Rosellini, supra* at 356. The Bar's investigation revealed only one complaint in 1977 which was never pursued by the Bar. It was the finding of the Board that, to the extent those standards may have been compromised, such compromise was attributable to certain problems with alcohol. Apart from this complaint and the eventual disbarment, Moynihan had no disciplinary sanctions. Moynihan has demonstrated that he conducted himself in an ethical manner before he was disbarred.

## C
### *The nature and character of the charge for which Moynihan was disbarred.*

The neglect of clients' legal matters and misappropriation from client trust accounts are contrary to standards of professional conduct. *See In re Batali,* 98 Wn.2d 610, 615, 657 P.2d 775 (1983). However the long–standing policy of this court has been that the gravity of the misconduct in itself should not preclude reinstatement if the attorney can establish he has rehabilitated himself. *In re Rosellini,* 108 Wn.2d 350, 357, 739 P.2d 658 (1987). This court has reinstated other attorneys disbarred for misappropriating client funds, after the attorneys dealt with the underlying alcohol problem causing the misconduct, and after they had maintained a lengthy period of sobriety. *See In re Johnson,* 92 Wn.2d 349, 597 P.2d 113 (1979) (over 4 years of sobriety); *In re Chantry,* 84 Wn.2d 153, 524 P.2d 909 (1974) (approximately 5 years); *In re Batali, supra* (time not stated). In this case Moynihan has abstained from alcohol since December 18, 1980. Such total abstinence is proof of the success of his treatment. Moynihan's testimony and the many strong letters recommending reinstatement support this conclusion. We find that Moynihan has sustained his

burden of proving that he has rehabilitated himself and will not in the future engage in conduct which led to his misuse of client funds.

## D
*The sufficiency of punishment and restitution.*

This criterion is measured by whether it will be unlikely for the disbarred attorney to forget his oath of attorney in the future. *In re Rosellini, supra* at 358. Moynihan has undergone the stigma of disbarment for nearly 7 years. "Any disbarred attorney suffers both personally and professionally." *In re Rosellini,* 108 Wn.2d 350, 358, 739 P.2d 658 (1987). That stigma has been a complicating factor in his efforts at rehabilitation. His earning capacity and station in life have been drastically reduced and affected. His family relations have been complicated and the disbarment has resulted in deprivations and adjustments in lifestyle. Moynihan has been sufficiently punished for the offense leading to his disbarment.

In regard to restitution, *Moynihan,* prior to disbarment, returned to his trust account all funds taken. There was no loss to clients and no restitution was required.

## E
*Moynihan's attitude, conduct, and reformation*
*subsequent to disbarment.*

The record makes evident Moynihan's progressive, extended and successful efforts at controlling and eliminating his underlying alcohol problems. He has experienced nearly 8 years of continuous sobriety. He has been active in the Lawyers' Forum of Southern California (a group of recovering alcoholic lawyers and judges) since 1984. He also continues to be a member of Alcoholics Anonymous, and was on the Board of Directors of Riverside Recovery Resources, Inc. The latter Board operates a residential treatment facility for alcoholic men. Further, a unanimous Board of Governors found that Moynihan's attitude and conduct since disbarment have been "excellent". Finding of fact 5.

**F**

*The time that has elapsed since
Moynihan's disbarment.*

The purpose of this criterion is to delay reinstatement until sufficient time has passed to enable the attorney to demonstrate conduct worthy of trust and confidence. *In re Rosellini, supra* at 359. Rules for Lawyer Discipline 9.1(a), which governs reinstatement, permits petitions 5 years after disbarment. The average period of disbarment before reinstatement has been 7 years. Moynihan has been disbarred for over 7 years. The record demonstrates that petitioner has demonstrated conduct worthy of reinstatement.

**G**

*Moynihan's current proficiency in the law.*

Moynihan, for a time read the advance sheets for the Washington Court of Appeals and Supreme Court. Since April 1988, he has been successfully working as a law clerk. Before reinstatement, Moynihan will be required to pass the bar examination, which will verify his proficiency in the law.

**H**

*Moynihan's sincerity, frankness, and truthfulness in presenting and discussing the factors relating
to his disbarment and reinstatement.*

Moynihan has demonstrated his sincerity, frankness, and truthfulness throughout the reinstatement proceedings. Furthermore, many letters were received by the Bar which support his petition for reinstatement. We agree with the Board of Governors that Moynihan has satisfactorily demonstrated all criteria for reinstatement.

CONCLUSION

Moynihan's own testimony and the many letters recommending reinstatement demonstrate that he has overcome the weaknesses that gave rise to his initial misconduct. Most of his earlier problems stemmed from his abuse of

alcohol. We applaud Moynihan for his fight against alcoholism and his commitment to helping other recovering alcoholics.

We agree with the Board of Governors that Moynihan has met his burden on each of the elements required for reinstatement.

Joseph T. Moynihan is hereby reinstated subject to his passing the bar examination and fulfilling all requirements imposed by the Washington State Bar Association.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, PEARSON, DURHAM, and SMITH, JJ., concur.

ANDERSEN, J., concurs in the result.