*In re* PETITION FOR REINSTATEMENT OF McWHORTER

(McWHORTER v GRIEVANCE ADMINISTRATOR)

Docket No. 99848. Argued March 8, 1995 (Calendar No. 14). Decided July 5, 1995. Rehearing denied 450 Mich 1208.

The Attorney Grievance Commission filed a formal complaint with the Attorney Grievance Board against Robert A. Mc-Whorter after he was found guilty in federal court of aiding and abetting the manufacture of methamphetamine. The petitioner subsequently was disbarred; however, the order of disbarment was vacated after the United States Court of Appeals for the Sixth Circuit vacated the district court's decision and remanded the case for trial. Meanwhile, the petitioner was convicted in the Kalamazoo Circuit Court of kidnapping and conspiracy to kidnap. A second formal complaint was filed, and his license to practice law was revoked as a result of those convictions. After remand on the federal charges, the petitioner was convicted by a jury of drug-related offenses and was sentenced to ten years imprisonment with a two-year special parole term. The United States Court of Appeals for the Sixth Circuit affirmed, 705 F2d 459 (CA 6, 1982).

On June 28, 1992, the petitioner was released from federal parole. Three months before being released, he petitioned for reinstatement of his license. The tri-county hearing panel determined that the petitioner had established the requirements for reinstatement pursuant to MCR 9.123(B) by clear and convincing evidence and reinstated him with certain conditions. The Attorney Grievance Commission sought review before the Attorney Discipline Board. The petitioner filed a cross petition, requesting that the conditions imposed by the hearing panel be removed. The Attorney Discipline Board remanded the case to the hearing panel, stating that there was insufficient evidence in the record to evaluate the nature and scope of the supervision of federal authorities. Thereafter, the board concluded that the monitoring of the petitioner by parole authorities was minimal and issued an order modifying the hearing panel's order of reinstatement and reinstated the petitioner and removed the conditions imposed. The Attorney Grievance Commission appeals.

In separate opinions, the Supreme Court *held:*

The petition for reinstatement must be denied, and the petitioner may not reapply for reinstatement until June 28, 1997, five years from the date of his release from federal parole.

Chief Justice BRICKLEY, joined by Justice MALLETT, stated that a review of the entire record does not support the decision of the hearing panel or the Attorney Discipline Board to reinstate the petitioner to the practice of law in this state at this time. The petitioner has not spent adequate time outside the supervision of parole authorities sufficient to demonstrate that he has a proper understanding of and attitude toward the standards imposed on members of the bar or that he will conduct himself in conformity with those standards.

To be eligible for reinstatement to the practice of law, a petitioner must prove by clear and convincing evidence satisfaction of the criteria of MCR 9.123(B)(1) to (7). Where, as in this case, reinstatement of an attorney involves an analysis of subrules 6 and 7, a balancing of several factors is required, such as whether the petitioner has spent sufficient time outside the supervision of parole authorities to clearly and convincingly establish satisfaction of the requirements of the subrules. No single factor is conclusive; each must be evaluated in light of the others.

In this case, the petitioner has not spent sufficient time away from the authority of parole officers to demonstrate by clear and convincing evidence that he safely may be recommended to the public, the courts, and the legal profession as a person fit to be consulted by others or to represent them and act in matters of trust and confidence. MCR 9.123(B)(7). Sufficient time has not passed in order that he may demonstrate a proper understanding of and attitude imposed on members of the bar under MCR 9.123(B)(6).

Justice RILEY, joined by Justice BOYLE, concurring, joined in the imposition of a five-year waiting period following a period of parole supervision in the absence of a majority recognition of permanent disbarment with no opportunity ever to reapply, although the record calls for the permanent disbarment of the petitioner.

Reversed.

Justice WEAVER, concurring in the result only, stated that the petitioner should be permanently disbarred because the facts that led to his suspensions from practice, disbarment, and criminal convictions can leave no doubt that he cannot be safely recommended to the public, the courts, and the legal profession. No matter what duration of disbarment is imposed,

the conduct that led to it will not change; the totality of the petitioner's conduct cannot be ignored. The finality of permanent disbarment is in the best interests of the public, the courts, the legal profession, and the petitioner.

Justice CAVANAGH, concurring, stated that a published opinion is not the appropriate vehicle to set a minimum spacing of five years between subsequent petitions for reinstatement of disbarred attorneys. Rather, the proper way to effect such change is amendment of the court rules.

Justice LEVIN, dissenting, stated that the order of reinstatement should be affirmed. The length of time following disbarment and unsupervised release into society, in addition to the seriousness of the underlying misconduct, is relevant to the determination whether and when, if at all, a disbarred lawyer should be reinstated. In most jurisdictions reinstatement is possible, even in egregious circumstances, unless a court rule or law precludes reinstatement. In this case, sufficient time has elapsed since McWhorter's offense and his release from incarceration to determine his moral fitness to practice law. Requiring him to wait five years to reapply serves little or no useful purpose. Further, the imposition of a new five-year period from release from parole supervision should be done only by court rule.

*Robert A. McWhorter* in propria persona, and *Colista, Adams & Palmer, P.C.,* of counsel (by *F. Philip Colista*).

*Philip J. Thomas, Jane Shallal,* and *Susan E. Gillooly* for the Attorney Grievance Commission.

BRICKLEY, C.J. In this case we decide whether the decisions of the tri-county hearing panel and the Attorney Discipline Board to reinstate petitioner's license to practice law are supported by proper evidence on the whole record. We believe that a review of the entire record does not support the decision of the hearing panel or the Attorney Discipline Board to reinstate petitioner Robert McWhorter to the practice of law in this state at this time. We conclude that petitioner has not spent adequate time outside the supervision of

parole authorities sufficient to demonstrate that he has a proper understanding of and attitude toward the standards imposed on members of the bar or that he will conduct himself in conformity with those standards. We therefore would reverse the decision of the Attorney Discipline Board and deny Mr. McWhorter's petition for reinstatement, and would hold that petitioner may not reapply for reinstatement until June 28, 1997, five years from the date of his release from federal parole.

I

In December 1978, Robert McWhorter was found guilty in federal court of a ten-count indictment for the offense of aiding and abetting the manufacture of methamphetamine. 21 USC 841(a)(1), 18 USC 2(a), and 21 USC 841(b)(1)(B). He was sentenced to five years imprisonment with a special parole term of two years. As a result of this conviction, the Attorney Grievance Commission filed a formal complaint against petitioner in January, 1979.[1] Petitioner was disbarred by order filed June 8, 1979. However, the order of disbarment was later vacated by notice dated September 15, 1980, because the United States Court of Appeals for the Sixth Circuit vacated the decision and remanded the case for trial.[2]

Meanwhile, petitioner was convicted in Kalama-

---

[1] The formal complaint was dated January 10, 1979, charging petitioner with violation of GCR 1963, 953(1) to (5), GCR 1963, 969, and Canon 1 of the Code of Professional Responsibility, DR 1-102(A)(1), (3) to (6).

[2] Respondent remained suspended, however, as a result of an order of an Ingham County hearing panel filed on August 5, 1977. In that proceeding, petitioner was suspended from the practice of law for a period of 121 days for misconduct in handling client funds. This Court ultimately affirmed the order of discipline. *State Bar Grievance Administrator v McWhorter (On Rehearing)*, 407 Mich 278, 282; 284 NW2d 472 (1979).

zoo Circuit Court on May 29, 1980, for an unrelated incident of kidnapping, MCL 750.349; MSA 28.581, and conspiracy to kidnap, MCL 750.157a; MSA 28.354(1). As a result, a second formal complaint was filed on June 20, 1980, charging petitioner with violation of GCR 1963, 953(2) to (5), and Canon 1 of the Code of Professional Responsibility, DR 1-102(A)(3) and (4). The convictions arose out of the abduction of David Nixon from McWhorter's law office. The kidnapping was arranged by petitioner in order to extort money for the payment of McWhorter's legal services. Petitioner's license to practice law was ultimately revoked, effective February 24, 1981, as a result of these convictions.

After remand on the federal charges, on October 3, 1980, petitioner was convicted of drug-related offenses in the United States District Court for the Western District of Michigan, Southern Division. A jury found petitioner guilty of conspiracy to import cocaine into the United States, aiding and abetting the manufacture of methamphetamine, and using a communication facility, i.e., a telephone, to facilitate the manufacture of methamphetamine. The jury also convicted McWhorter of conspiracy to manufacture, possess with intent to distribute, and distribute methamphetamine. 21 USC 841(a)(1). Petitioner was sentenced to ten years imprisonment with a two-year special parole term.[3]

The federal convictions arose out of petitioner's attempt to finance a drug-smuggling trip to South America to purchase cocaine and marijuana. McWhorter and an undercover Drug Enforcement Administration agent met and discussed McWhorter's drug-smuggling scheme and his contacts with

_____
[3] Petitioner was released from federal parole on June 28, 1992.

various drug sources. The DEA agent told Mc-
Whorter that he was interested in chemical drugs,
and McWhorter responded that he knew a chemist
who would manufacture drugs. Additionally, Mc-
Whorter offered to render legal services to the
undercover agent, proposing to set up a strawman
chemical company in order to make detection of
the drug scheme more difficult. On appeal, Mc-
Whorter contended that he was involved in only
one drug conspiracy, i.e., the manufacturing of
methamphetamine in order to finance the South
American drug-smuggling scheme. The United
States Court of Appeals for the Sixth Circuit re-
jected his argument and affirmed the convictions.[4]

Petitioner served prison terms for both his fed-
eral and state convictions. He was released on
parole in 1985 and sent to a halfway house in
Grand Rapids for the following two months. On
June 28, 1992, he was released from federal pa-
role. Approximately three months before being
released from federal parole, petitioner filed a
petition for reinstatement of his license to practice
law in Michigan.

A hearing was held by the tri-county hearing
panel and it was determined that petitioner had
established the requirements for reinstatement
pursuant to MCR 9.123(B) by clear and convincing
evidence. Petitioner was therefore reinstated with
conditions, including payment of expenses, contin-
uance of weekly therapy sessions, maintenance of
church activities, and monitoring by a licensed
attorney every two months for one year.

The Attorney Grievance Commission filed a peti-
tion for review of the hearing panel's decision with
the Attorney Discipline Board. Petitioner filed a
cross petition for review, requesting that the condi-

[4] *United States v McWhorter,* 705 F2d 459 (CA 6, 1982).

tions imposed by the hearing panel be removed.
The Attorney Discipline Board remanded the case
to the hearing panel, stating that there was not
"sufficient evidence in the record upon which to
evaluate the nature and scope of the 'supervision
of federal authorities' . . . ." In May, 1994, the
Attorney Discipline Board concluded that the mon-
itoring of petitioner by parole authorities was
minimal and issued an order modifying the hear-
ing panel's order of reinstatement. The Attorney
Discipline Board reinstated petitioner and re-
moved the conditions imposed by the hearing
panel. The Attorney Grievance Commission filed
an application for leave to appeal, requesting re-
view of the Attorney Discipline Board's decision.
We granted leave to appeal[5] and now reverse.

II

We review the decision of the hearing panel and
the Attorney Discipline Board "for proper eviden-
tiary support on the whole record."[6] *Grievance
Administrator v August,* 438 Mich 296, 304; 475
NW2d 256 (1991).[7] We simultaneously recognize
that "[t]he power to regulate and discipline mem-
bers of the bar rests ultimately with this Court
pursuant to constitutional mandate." *Id.* at 304.[8] A

[5] 447 Mich 1202 (1994).

[6] The record "must include a list of docket entries, a transcript of
testimony taken, and all pleadings, exhibits, briefs, findings of fact,
and orders in the proceeding." MCR 9.122(D).

[7] See *In re Grimes,* 414 Mich 483; 326 NW2d 380 (1982); *In re
Freedman,* 406 Mich 256; 277 NW2d 635 (1979). See also *State Bar
Grievance Administrator v Estes,* 392 Mich 645, 649-650; 221 NW2d
322 (1974), reviewing this Court's refusal to "substitute [its] judgment
'for that of the panel below which had an opportunity and a mandate
not only to garner evidence of misconduct but to observe and assess
the demeanor and credibility of the witnesses,'" citing *State Bar
Grievance Administrator v Estes,* 390 Mich 585, 597; 212 NW2d 903
(1973).

[8] See Const 1963, art 6, § 5; see also *Grimes,* n 7 *supra* at 489-490,

license to practice law is "a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and counselor and as an officer of the court." MCR 9.103(A). Cognizant of this responsibility, we review the decisions of the hearing panel and the Attorney Discipline Board to reinstate petitioner to determine if they are supported by the record as a whole.

A

In order to be reinstated, petitioner must establish that he is eligible for reinstatement by clear and convincing evidence, by proof that he has satisfied the criteria set forth in MCR 9.123(B)(1) to (7):[9]

(1) he or she desires in good faith to be restored to the privilege of practicing law in Michigan;

(2) the term of the suspension ordered has elapsed or 5 years have elapsed since revocation of the license;

(3) he or she has not practiced or attempted to practice law contrary to the requirement of his or her suspension or revocation;

(4) he or she has complied fully with the order of discipline;

(5) his or her conduct since the order of discipline has been exemplary and above reproach;

(6) he or she has a proper understanding of and attitude toward the standards that are imposed on members of the bar and will conduct himself or herself in conformity with those standards;

stating "[i]t is this Court, however, that has ultimate responsibility to oversee the conduct of the . . . members of the State Bar, and to keep unsullied the reputation of the profession."

[9] We do not consider MCR 9.123(B)(8) and (9) because they are not applicable in the present case.

(7) taking into account the nature of the misconduct which led to the revocation or suspension, he or she nevertheless can safely be recommended to the public, the courts, and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court . . . .

The record appears to support both the hearing panel's and the Attorney Discipline Board's determination that petitioner has complied with subrules 1 to 5. We are therefore concerned only with whether the record as a whole supports the conclusion that petitioner has established the requirements set forth under subrules 6 and 7.[10]

We initially note that the decision whether to reinstate a disbarred attorney is a balancing process. Moreover, we conclude that a proper analysis of subrules 6 and 7 requires the balancing of several factors.[11] In reviewing the various factors,

[10] Although each requirement under MCR 9.123(B) is interrelated, each subrule evaluates a different aspect of petitioner's eligibility. In this manner, we held in *August, supra* at 310 that "subrule 6 is primarily directed to the question of the applicant's ability, willingness and commitment to conform to the standards required of members of the Michigan State Bar. Subrule 7 shifts the focus to the public trust which this Court has the duty to guard."

[11] Quoting *In re Raimondi,* 285 Md 607, 618; 403 A2d 1234 (1979), we have previously summarized this balancing process in *August, supra* at 307, stating:

"On one side of the scale is placed the seriousness of the misconduct which produced disbarment and the court's duty to society at large to see that only those persons who are worthy of the faith and confidence of the general public are permitted to handle the affairs of others. . . . On the other side are placed the subsequent conduct and reformation of such individual, his present character, his present qualifications and competence to practice law, and the fact that the very nature of law practice places an attorney in a position where an unprincipled individual may do tremendous harm to his client."

we recognize that no one factor is conclusive, but, rather, each must be evaluated in light of the others. Specifically, we must consider whether petitioner has spent sufficient time outside the supervision of parole authorities to clearly and convincingly establish that he has satisfied the requirements of subrules 6 and 7.

B

The passage of time, by itself, is not sufficient to support reinstatement.[12] The relevant inquiry is whether petitioner has spent an appreciable time outside the supervision of parole authorities in order for the hearing panel to fully evaluate the disbarred attorney's present ability to comport with the fitness requirements. See *In re Reinstatement of Callanan,* 440 Mich 1207 (1992); see also *August, supra.* Moreover, the five-year period after which a disbarred attorney may petition for reinstatement is but "a minimum period in which rehabilitation may occur following revocation of the license to practice law; the passage of five years in no way guarantees eligibility for reinstatement." *Id.* at 310. In *Callanan, supra* at 1207, this Court held by order that "[t]he misconduct that led to the revocation of the petitioner's license to practice law was substantial and, because the petitioner had spent little or no time outside the supervision of federal authorities since his license was revoked, it was not possible for the hearing panel and the Attorney Discipline Board to determine the present fitness of the applicant for readmission."

In *August,* an attorney was disbarred after he

---

[12] See *In re Brown,* 166 W Va 226, 235; 273 SE2d 567 (1980), stating: "Most courts hold that the mere passage of time alone is insufficient to warrant reinstatement."

was convicted of attempting to defraud the United States by conspiring with a court clerk in the United States Bankruptcy Court for the Eastern District of Michigan to manipulate the blind-draw system of assigning judges.[13] In an attempt to avoid a judge known to carefully examine and reduce attorney fee awards, August and the clerk arranged the assignment of judges so that August's firm avoided the judge in a significant number of cases.

August was imprisoned for approximately one year and was transferred to a halfway house. He remained there until November 19, 1985, when the district judge reduced his sentence to time already served. August filed a petition for reinstatement of his license to practice law in October, 1988. The Wayne County hearing panel denied his request. The Attorney Discipline Board held that August was eligible for reinstatement. 438 Mich 302-303. On appeal to this Court, we remanded the case to the Attorney Discipline Board to reexamine whether the petitioner could be recommended to a position of trust as a member of the bar. Significantly, we held that the hearing panel is not limited to a choice between reinstatement and permanent disbarment. Rather, we stated that a third alternative exists where it is determined that a sufficient period of time has not elapsed to judge whether the petitioner may be recommended for reinstatement.[14]

---

[13] August was convicted under 18 USC 371 of conspiring to defraud the United States of the due administration of justice and under 18 USC 1503 of impeding the due administration of justice and attempting to influence a court clerk in the discharge of her official duties. *Id.* at 299.

[14] This Court held:

Finally, we do not agree with the board's assessment that the reinstatement criteria allow only two possibilities: that peti-

Petitioner in the present case applied for reinstatement three months before his release from his federal parole. The Attorney Discipline Board remanded the case to the hearing panel to determine the nature and scope of the federal parole authorities' supervision. The board held that petitioner was not subject to rigid authority during his final period of parole.[15] However, the critical consideration is not necessarily the *extent* of supervision, but rather the fact that petitioner *was* under the supervision of parole authorities at the time he applied for reinstatement. Although in these proceedings the nature and scope of supervision may be relevant, the mere fact that petitioner had not been away from the supervision of parole authorities greatly influences the determination whether he has sincerely and sufficiently demonstrated that he will be able to understand and operate within the standards of the bar. Therefore, it is only after a petitioner has spent sufficient time outside the control of parole officers that the hearing panel or the Attorney Discipline Board is able to determine whether the petitioner has been rehabilitated and may therefore be safely recommended for reinstatement. Although he may not have been subject to strict scrutiny by parole authorities, petitioner was still serving his parole and, upon petition for reinstatement, must demon-

tioner be now readmitted or forever barred from the practice of law in this state. A third alternative is illustrated in this case, where the hearing panel determined that petitioner "could not *now* be safely recommended as a person of trust." [*Id.* at 312-313.]

[15] The Attorney Discipline Board stated:

[T]he testimony of the parole officers established that his reporting on a monthly basis eventually consisted of little more than perfunctory meetings during which the petitioner confirmed his continued residence and employment in Kalamazoo.

strate his honorable behavior outside such authorities for a period that would enable this Court to safely recommend him to the public.[16] To prevent the petitioner's immediate reapplication in the present case, we hold that petitioner is not eligible for reinstatement until June 28, 1997, five years from the date of his release from federal parole.

We borrow this time span from MCR 9.123 and analogize it to the present case. For the same reasons, five years is the minimum period after which a disbarred attorney may be eligible for reinstatement, we would hold that it is a sufficient period outside the supervision of parole authorities and the contemplation of petition for reinstatement to fully evaluate his fitness to practice law. In *August, supra* at 310, this Court stated that five years was the *minimum* time in which a petitioner could apply for reinstatement, but in no way guaranteed eligibility for reinstatement. In accord with this decision, even though five years have elapsed since petitioner's disbarment, we find that he is not eligible for reinstatement and would impose this additional period of time to review his fitness. We are persuaded that this addresses the problem identified by one commentator: "The disbarred attorney may file another petition at a later date. In light of this, it would be helpful if the rules provided a minimum spacing between subsequent petitions to prevent a lawyer whose petition is denied from immediately filing another petition." Martin, Dean & Webster, Michigan Court Rules

---

[16] We note that even though a period of time has now elapsed since petitioner was under the supervision of parole authorities, he has been involved in his petition for reinstatement since his release from parole. Therefore, we are equally unable to safely judge whether petitioner has now been rehabilitated—even though some time has elapsed outside the supervision of parole authorities—because his actions have been under similar, if not heightened, scrutiny by the Attorney Grievance Commission, the hearing panel, and the Attorney Discipline Board.

Practice (3d ed), p 579, author's comment to MCR 9.123.

We further note that petitioner should not automatically be entitled to reinstatement at the expiration of five years; it is merely the minimum time before he should be permitted to apply for reinstatement because more time may be necessary to demonstrate his fitness. *August, supra.* If petitioner chooses to petition again for reinstatement after the specified date, he would be subject to a full review, including consideration whether he should be subject to permanent disbarment.

III

We conclude that petitioner has not spent sufficient time away from the authority of parole officers to demonstrate by clear and convincing evidence that he may be safely recommended to the public, the courts, and the legal profession as a person fit to be consulted by others or to represent them and act in matters of trust and confidence. MCR 9.123(B)(7). Nor has sufficient time passed in order that he may demonstrate a proper understanding of and attitude imposed on members of the bar pursuant to MCR 9.123(B)(6). We therefore would reject petitioner's application for reinstatement and would hold that he may not reapply for reinstatement until June 28, 1997, five years from the date of his release from federal parole. We therefore would reverse the decision of the Attorney Discipline Board.

MALLETT, J., concurred with BRICKLEY, C.J.

RILEY, J. (*concurring*). We agree with Justice WEAVER's assessment that this record calls for the permanent disbarment of Mr. McWhorter. How-

ever, in the absence of a majority recognizing the proposition that there should be "permanent" disbarment, with no opportunity ever to reapply, we join in the ruling of the lead opinion imposing a five-year waiting period following a period of parole supervision.

Boyle, J., concurred with Riley, J.

Weaver, J. (*concurring in the result only*). While I concur in the result of continuing disbarment reached by the lead opinion, I write separately because I would permanently disbar petitioner Robert McWhorter. The thorough recitation in the lead opinion of the facts that led to petitioner's suspensions from practice, disbarment, and criminal convictions can leave no doubt that he cannot be safely recommended to the "public, the courts, and the legal profession."[1] Nor am I convinced that petitioner has now or ever will have a "proper understanding of the attitude toward the standards that are imposed on members of the bar and will conduct himself . . . in conformity with those standards."[2]

This Court is charged with the responsibility of overseeing the conduct of the membership of the State Bar and has the power to "make any order it deems appropriate . . . ."[3] It has the power to impose, as proposed by the lead opinion, an arbitrary waiting period before petitioner can file for reinstatement. However, what logic there is in imposing an arbitrary waiting period in this case is lost because the petitioner will remain under our scrutiny and therefore will probably attempt to conform his conduct to our standards until he reaches his goal of readmittance.

---

[1] MCR 9.105 and MCR 9.123(B)(7).

[2] MCR 9.123(B)(6).

[3] MCR 9.122(E).

No matter what the duration of petitioner's disbarment, the conduct that led to it will not change. While this petitioner was an attorney, he was convicted by a jury of conspiracy to import cocaine, unlawful manufacture of methamphetamine, using a telephone to facilitate the manufacture of methamphetamine, conspiracy to possess with intent to distribute methamphetamine, and kidnapping a client to extort money. He used his legal training to set up a strawman corporation to conceal the drug conspiracies. He had also previously been suspended for mishandling client funds. Regardless of the sympathy or compassion we may have for the situation petitioner McWhorter has made for himself, ever readmitting him to the Michigan State Bar would make a mockery of this Court's duty to protect the public and the profession.

I do not, however, believe that it is practical or advisable to attempt to enumerate types of conduct or categories of crimes that should automatically result in disbarment. This Court should continue to review petitions for reinstatement case by case. In this case, the totality of this petitioner's conduct cannot be ignored. The finality of permanent disbarment is in the best interests of the public, the courts, and the legal profession. This finality will also allow petitioner to go forward with his life plans, knowing he need never consider practicing law in Michigan again.

CAVANAGH, J. (*concurring*). I agree with much of the lead opinion. For example, I agree that the petitioner has not spent enough time outside the supervision of parole authorities to demonstrate that he understands, and will conform to, the standards imposed on members of the bar. I agree that he cannot now be safely "recommended to the

public, the courts, and the legal profession as a
person fit to be consulted by others and to repre-
sent them and otherwise act in matters of trust
and confidence . . . ." MCR 9.123(B)(7). I also
agree that it would be helpful if the rules provided
a minimum spacing between subsequent petitions.

I write separately, however, because I do not feel
that a published opinion is the appropriate vehicle
to set that minimum spacing at five years. I do not
necessarily disagree with the five-year ban; I
merely believe that the proper way to effect the
change is by amending the court rules. The same
can be said regarding the issue of permanent
disbarment. If such a penalty is to be created, it
should be done through the rule-making process
provided in MCR 1.201.

The primary benefits of pursuing such a course
are that it provides an opportunity for any inter-
ested parties to comment on the proposed changes,
and it would let disbarred attorneys know exactly
where they stand vis-à-vis reinstatement. More-
over, amending the court rules is superior to con-
stantly interfering with the discretionary decisions
of the Attorney Discipline Board each time we feel
a wrong decision is made.

Levin, J. (*dissenting*). The question presented is
whether Robert A. McWhorter should be re-
instated as a member of the state bar. McWhorter
was disbarred following his convictions of federal
and state crimes. The hearing panel ordered re-
instatement with conditions. The Attorney Disci-
pline Board affirmed.[1]

The majority concludes that McWhorter should
not now be reinstated because sufficient time has
not elapsed since he was under the supervision of

[1] McWhorter appealed the conditions of reinstatement. They were
eliminated by the board without contest by the Grievance Adminis-
trator.

parole officers. The majority imposes a five-year period after which McWhorter may reapply for reinstatement. I would affirm the order of reinstatement.

I

McWhorter was convicted in the United States District Court for the Western District of Michigan of conspiracy to import cocaine, unlawful manufacture of methamphetamine, and conspiracy to distribute methamphetamine, and was sentenced to ten years imprisonment. In circuit court, McWhorter was convicted of kidnapping and conspiracy to kidnap, and was sentenced two to five years imprisonment.[2] He served the federal and state sentences concurrently in federal prison and was paroled in June, 1985. He remained on parole until June, 1992.

McWhorter was disbarred effective February 24, 1981. After his release from prison, he worked as an automobile salesman, and then started a legal research business. He petitioned for reinstatement in April, 1992, before completion of his parole. In April, 1993, the hearing panel reinstated McWhorter with conditions. These included continued psychotherapy, regular attendance at church, and supervision by a local attorney.[3] The panel majority said:

[2] See *People v Buckey/McWhorter*, 424 Mich 1; 378 NW2d 432 (1985), and *People v McWhorter (On Remand)*, 150 Mich App 826; 389 NW2d 499 (1986).

[3] McWhorter presented testimony from numerous witnesses, including his pastor, family members, and other local attorneys who testified to the changes in his personality and his current moral fitness and character. His pastor discussed McWhorter's extensive and sincere (in the pastor's opinion) involvement in church activities. McWhorter's wife and children related the changes in McWhorter's personality and the improvement in their relationships with him. Local attorneys who knew McWhorter or used his legal research

[W]e are persuaded on the whole record, that Mr. McWhorter has established by clear and convincing evidence that he should be reinstated to the practice of law. Mr. McWhorter has become an active member of his church. He had been able to rebuild his relationship with his wife, daughter and son. He has established a productive business and appears to be handling the pressures associated with it. He has resumed a life in the community in spite of the opposition he has faced.[4]

The Grievance Administrator appealed the reinstatement order, claiming that McWhorter had failed to establish compliance with MCR 9.123(B)(6)[5] and (7)[6] by clear and convincing evidence and that sufficient time had not elapsed since McWhorter's release from parole to properly judge his rehabilitation and fitness to practice law. In response to this Court's peremptory reversal in *In re Reinstatement of Callanan,* 440 Mich 1207 (1992), the board remanded this case to the hearing panel for further testimony concerning the

services testified to his competence and skill. His therapist testified regarding the progress he had made in therapy since he started while on parole in 1986. McWhorter testified, and acknowledged that numerous personal problems affected his judgment at the time the crimes were committed, including alcoholism and emotional difficulties.

[4] The dissenting member of the panel said that "McWhorter has made significant strides in becoming a contributing member of our society, but I do not believe he has yet established that he should be reinstated to the honorable practice of law at this time."

[5] Under MCR 9.123(B)(6), a petitioner must establish by clear and convincing evidence that "he or she has a proper understanding of and attitude toward the standards that are imposed on members of the bar and will conduct himself or herself in conformity with those standards."

[6] MCR 9.123(B)(7) provides that the board must conclude by clear and convincing evidence that the petitioner "can safely be recommended to the public, the courts, and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court . . . ."

nature and extent of McWhorter's supervision while on parole. In May, 1994, the board affirmed the hearing panel's order and eliminated the conditions.

The board, citing this Court's decision in *Grievance Administrator v August,* 438 Mich 296; 475 NW2d 256 (1991), observed that eleven years had elapsed between revocation of McWhorter's license and his petition for reinstatement, and more than fourteen years since McWhorter committed the acts that resulted in the convictions. Relying on its interpretation of *August,* the board rejected the Grievance Administrator's claim that the seriousness of McWhorter's crimes alone requires that he never be reinstated as a member of the state bar. It determined that sufficient time had elapsed to assess McWhorter's fitness to practice law, distinguishing the circumstances in the instant case from those presented in *Callanan.* The board concluded that the hearing panel's determination was based on ample evidence and "was an appropriate application of the subjective judgment which is inherent to a determination of eligibility for reinstatement under MCR 9.123(B)."

II

In *August, supra,* this Court held that "the nature of the offense and the time elapsed since its commission and since disbarment are relevant and important considerations in determining whether a disbarred attorney should be recommended to the position of public trust that is held by members of the Michigan State Bar."[7] Thus, "an attorney may be denied readmission on the grounds that sufficient time has not passed to determine the present fitness of the applicant for readmis-

[7] *Id.* at 313-314.

sion. Such a denial should not be deemed a permanent disbarment."[8]

In *Callanan,* following the *August* decision, the Court peremptorily reversed the board's reinstatement order, stating, "[t]he misconduct that led to the revocation of the petitioner's license to practice law was substantial, and, because the petitioner had spent little or no time outside the supervision of federal authorities since his license was revoked, it was not possible for the hearing panel and the Attorney Discipline Board to determine the present fitness of this applicant for readmission."[9]

Both *August* and *Callanan* suggest that the length of time following disbarment and unsupervised release into society, in addition to the seriousness of the underlying misconduct, is relevant to the determination whether and when, if at all, the disbarred lawyer should be reinstated. The Grievance Administrator argues, and one of my colleagues would hold, that McWhorter's crimes should permanently prevent his reinstatement.[10]

---

[8] *Id.* at 314. The majority acknowledged that the seriousness of the underlying criminal conduct should be considered in deciding whether a disbarred lawyer should be reinstated, distinguishing between conduct unrelated to the practice of law and conduct involving the corruption of the administration of justice. *Id.* at 310. The majority also noted that some jurisdictions hold that certain conduct may be so egregious that reinstatement should be precluded; however, the Court declined to so rule on the facts presented. *Id.* at 313.

The Court remanded for a determination whether sufficient time had elapsed to assess August's fitness and a majority of the board panel subsequently ordered reinstatement. However, the Court issued a peremptory reversal of the order and denied the petition for reinstatement on the basis of reasoning of the dissenting opinion. *In re Reinstatement of August,* 441 Mich 1207 (1993).

[9] *Id.* at 1207. Both the hearing panel and the ADB ordered reinstatement. Callanan had been released from confinement in November, 1988, almost four years before the Court's October 30, 1992, order.

[10] Although this Court in *August, supra* at 313, n 11, noted that certain states have permanently precluded reinstatement under some circumstances, some of these rules have changed since *August* was

In most jurisdictions reinstatement is possible, even in egregious circumstances, unless a court rule or law precludes reinstatement. The Washington Supreme Court ordered reinstatement in a case involving the misuse of client funds, stating,

> We have based this decision upon the longstanding doctrine of this court and of virtually every other jurisdiction that disbarment is not a permanent disability. Upon a proper showing of rehabilitation, an attorney may be reinstated.[11]

McWhorter provided ample evidence in support of the hearing panel's and the board's determination.[12] The record, read as a whole, demonstrates that McWhorter has the moral and professional fitness to practice law again in this state. In a similar case, *In re Reinstatement of Wegner,* 417 NW2d 97, 98 (Minn, 1987),[13] the petitioner had

decided. The District of Columbia Court of Appeals overruled *In re Kerr,* 424 A2d 94 (DC App, 1980), in *In re McBride,* 602 A2d 626 (DC App, 1992), in which the court revisited the District of Columbia Code provision related to disbarment for acts of moral turpitude and concluded that it should not be interpreted to require permanent disbarment. 602 A2d 640-641.

[11] *In re Rosellini,* 108 Wash 2d 350, 364; 739 P2d 658 (1987). See also *In re Robbins,* 172 Ariz 255, 256; 836 P2d 965 (1992); *Florida Bar re Hipsh,* 586 So 2d 311, 314 (Fla, 1991) (distinguishing between disbarred and permanently disbarred, but still permitting application for reinstatement by leave of court).

The West Virginia Supreme Court observed:

> The concept of rehabilitation cannot be framed around a set of specific principles but will vary depending on the particular facts of a given case. Rehabilitation, ultimately, is demonstrated by a course of conduct that enables the Court to conclude there is little likelihood that after such rehabilitation is completed and the applicant is readmitted to the practice of law he will engage in unprofessional conduct. [*In re Brown,* 166 W Va 226, 234; 273 SE2d 567 (1980).]

[12] N 3.

[13] See also *In re Trygstad,* 472 NW2d 137 (Minn, 1991) (reinstating an attorney who had been disbarred for 7½ years on the basis of his conviction for the sale of cocaine to an undercover officer).

been convicted of conspiracy to smuggle marijuana in 1975, was disbarred in December, 1979, was released from prison in 1980, and entered treatment for alcoholism in 1982. In granting reinstatement, the Minnesota Supreme Court observed that the petitioner had acknowledged the wrongfulness of his conduct, the misconduct had occurred twelve years before the court's decision, and the petitioner had been released from prison for 7½ years and had been chemical-free for five years. Further, the petitioner offered substantial evidence of a change for the better in character.[14] The court said:

> We recognize the severity of petitioner's prior misconduct. Indeed, we are not quick to reinstate a lawyer who committed such a reprehensible crime, which led to disbarment in the first instance. However, petitioner has demonstrated by clear

[14] Wegner presented evidence that alcohol had been a serious problem in his life at the time of his misconduct, that he had undergone a marked change in his personality since disbarment, that he had been a conscientious and diligent worker in his employment after release from prison, that he participated in Alcoholics Anonymous and had abstained from alcohol since 1982, and that a psychiatrist had determined that he had made a complete psychological rehabilitation since 1978 with no chance that he would repeat his illegal behavior. *Id.* at 99.

Other courts have concluded that petitioners who had offered substantial evidence of their good conduct and treatment since disbarment should be reinstated. In *Rosellini,* n 11 *supra,* the Washington Supreme Court noted that the petitioner had sought professional counseling, worked in increasingly responsible positions, received letters praising his integrity and honesty from employers, and participated in a wide variety of community activities, including his church and his children's schools. *Id.* at 359. See also *In re Moynihan,* 113 Wash 2d 219; 778 P2d 521 (1989) (reinstatement was ordered for a lawyer who had been disbarred for misuse of client funds on the basis of evidence that he participated in alcohol treatment and community activities, as well as letters from members of the community testifying regarding his character and professional reputation); *Robbins,* n 11 *supra* (reinstatement was ordered for a lawyer disbarred for misuse of client funds on the basis of evidence that he had worked diligently to reform himself and had been a good citizen for more than a decade).

and convincing evidence that he has had a change in his professional moral character.[15]

In emphasizing the seriousness of the underlying offenses committed by McWhorter, the majority ignores other relevant factors that should be considered in deciding whether to order reinstatement.

### III

Sufficient time has elapsed since McWhorter's offense and his release from incarceration to determine his moral fitness to practice law, in compliance with MCR 9.123(B)(7). McWhorter was convicted for acts that occurred over seventeen years ago, he was disbarred fourteen years ago, and was released from prison ten years ago. He has been free from parole supervision for almost three years. His parole officers reported that he fully complied with the conditions of parole.[16]

The majority concludes that "the mere fact that petitioner had not been away from the supervision of parole authorities [at the time of petitioning for reinstatement] greatly influences the determination whether he has sincerely and sufficiently demonstrated that he will be able to understand and operate within the standards of the bar."[17] As other courts have concluded in similar circumstances, requiring McWhorter to wait five years to reapply at some future time serves little or no

---

[15] *Id.* at 100. The court imposed several conditions on reinstatement, including continued sobriety.

[16] In *Callanan,* it was unclear how much time had passed since Callanan had been released from parole, although it appears to have been for far less time than in the instant case. In *August,* the petitioner waited three years after release from prison to request reinstatement, as distinguished from seven in the instant case.

[17] *Ante,* p 141.

useful purpose.[18] It is undisputed that McWhorter complied with all the conditions of his parole and that no adverse incidents were reported by his parole officers. By requiring McWhorter to wait additional time before reapplying, the majority summarily discounts what is indisputably a solid record of rehabilitation since release from prison under the guise that McWhorter was required to comply with parole regulations. This approach ignores the quality of the substantial evidence presented to the hearing panel and the Attorney Discipline Board.

Finally, I agree with Justice CAVANAGH that the imposition of a five-year period from release from parole supervision should be done only by court rule under the Court's rule-making authority. By creating this new requirement at this time, the majority avoids the publication and comment procedure and deprives the profession of an opportunity to comment and suggest alternative approaches.

---

[18] See *Wegner,* 417 NW2d 99-100; *Rosellini,* n 11 *supra* at 360; cf. *In re Avcollie,* 43 Conn Supp 13, 22; 637 A2d 409 (1993) ("A redemptive and rehabilitative life requires the passage of time for documentation").