Application of William W. GAHAN
for Admission to the Bar of
Minnesota.

No. 49690.

Supreme Court of Minnesota.

May 11, 1979.

William W. Gahan, pro se.

Gislason, Dosland, Malecki, Gislason & Halvorson, C. Allen Dosland, and C. Thomas Wilson, New Ulm, for Minnesota State Board of Law Examiners.

Richard E. Klein, Director of Bar Admissions, St. Paul, for respondent.

Heard, considered, and decided by the court en banc.

TODD, Justice.

William Gahan seeks admission to the bar of the State of Minnesota. After his successful completion of the bar examination, he was requested by the Board of Law Examiners to appear before them to review the circumstances surrounding the discharge in bankruptcy of certain student loans obtained by Gahan to finance his education. After formal hearing, the Board determined that Gahan did not meet the standards required of applicants for admission to practice law in Minnesota. We affirm.

The facts in this matter are not in dispute. Gahan received his law degree from the University of San Francisco, California. He was admitted to practice law in California in 1976 and subsequently was admitted to practice law in Wisconsin. Gahan is single, has never been married, and has no dependents. During the time of his education, at both the undergraduate and graduate level, Gahan required financial assistance to obtain his law degree. To achieve this goal, he obtained a series of student loans under a Federally funded guaranty program. At the time of his graduation from law school, the total amount of these loans was approximately $14,000. At the time he received the loans, Gahan agreed to repay and understood that he would be expected to repay the loans upon or shortly after graduation. Generally, student loans are amortized over a 10-year period with interest at 7 percent, and the first payment is to commence about 9 months after graduation. A monthly payment of approximately $175 would be required to repay the loans under such a repayment schedule.

In December 1976, Gahan was employed by an Oakland, California, law firm at an annual salary of $15,000. In the summer of 1977, his employer experienced financial difficulties and Gahan was not paid for 2 months, and, as a result, he terminated his employment on August 15, 1977. Shortly thereafter, he received all of his unpaid wages and expenses, except a small amount of out-of-pocket travel expenses. Gahan was unemployed until October 1977, a period of 2 months, when he obtained employment with another California law firm at an annual salary of $18,000.

Gahan claims he made some initial payments upon the loan. Subsequently, however, he defaulted. On September 27, 1977, during his period of unemployment, Gahan obtained legal counsel and filed a voluntary petition for bankruptcy in the United States District Court of the Northern District of California. Immediately prior to filing his petition for bankruptcy, Gahan mortgaged his 1959 Jaguar automobile to a friend for a loan of $2,500. He deposited $1,000 of the loan funds in an exempt account at a savings and loan institution and deposited the remaining $1,500 in an exempt account at a co-op credit union. Under California law, these deposits were the maximum amounts which could be claimed as exempt from creditors.

At the time of the filing of the bankruptcy petition, Gahan had a number of current

obligations. He owed the balance on the student loans and $1,600 on a loan from the Hibernia Bank of San Francisco. These were the only debts scheduled in the bankruptcy petition. However, Gahan did disclose exempt items of $4,000, consisting of the $2,500 in the two bank deposits, the equity in the Jaguar automobile of $1,000, and $500 in household goods and wearing apparel. In addition, he disclosed the mortgage on the automobile in the amount of $2,500 and an $1,800 life insurance loan against a policy having a market value of $1,500. Gahan's bankruptcy petition showed total liabilities of $19,717.40 and $4,007 worth of assets, $4,000 of which was exempt.

After regaining employment and before his discharge in bankruptcy, Gahan reinstated his $1,600 obligation to Hibernia Bank and has paid this debt in full. He did so because he knew an officer at the bank and he believed he might need an additional loan from the bank some time in the future. Following his discharge in bankruptcy on February 7, 1978, Gahan used the balance of the $2,500 loan obtained from his friend and other funds to discharge the loan against his automobile which remained in his possession, free of encumbrances. As a result of these undertakings, the only debts actually discharged in the bankruptcy proceedings were the Federally insured student loans.

There is nothing connected with Gahan's bankruptcy to suggest that there was any fraud, deceit, or conduct which could be considered to involve moral turpitude. However, based on this evidence, the Board of Law Examiners found in part:

## "XXIII.

"Procuring discharge of this indebtedness (and no other) with so little effort to repay or extend the same and with only temporary loss of employment, no exceptional financial or health problems and no major misfortunes, while neither illegal nor constituting action evincing moral turpitude, nonetheless is conduct which would cause a reasonable man to have substantial doubt concerning applicant's honesty, fairness, and respect for the rights of others and for the laws of this state and nation amounting thereby to a lack of good moral character having a rational connection with applicant's fitness or capacity to practice law.

## "XXIV.

"Applicant continues to have and maintain a lack of recognition and appreciation of the underlying moral obligation and social (as opposed to legal) responsibility which arose when he was entrusted with the student loan funds in question."

As a result of these findings, the Board found Gahan was not a person of good moral character within the contemplation of our Rules of Admission and recommended that he not be admitted to practice law in Minnesota. Gahan petitioned this court for review of this recommendation.

The issue on appeal is whether, in view of the facts of this case and the applicable Federal rights protecting those who elect to file voluntary bankruptcy, the applicant to the Minnesota bar was properly denied admission on the grounds of insufficient moral character.

### 1. *Federal Bankruptcy Rights.*

Initially, we observe that persons discharging their debts in bankruptcy are afforded certain rights under Federal law. The fact of filing bankruptcy or the refusal to reinstate obligations discharged in bankruptcy cannot be a basis for denial of admission to the bar of the State of Minnesota. Any refusal so grounded would violate the Supremacy Clause of the United States Constitution since applicable Federal law clearly prohibits such a result. The leading case on this issue is *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In that case, the Supreme Court considered the constitutionality of a state statute which precluded a person from driving if he had an unsatisfied judgment arising out of an automobile accident. In effect, a person who had such a judgment discharged in bankruptcy could not drive unless he reaffirmed the discharged debt. The court held the statute violated the Su-

premacy Clause, and overruled *Kesler v. Department of Public Safety*, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962), and *Reitz v. Mealey*, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941), by changing its focus from the *purpose* of the state statute to the *effect* of the state statute. The court reasoned that the effect of the statute was to coerce the person into paying a discharged debt, and that such coercion contravened the bankruptcy act's objective of giving debtors a " 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' " 402 U.S. 648, 91 S.Ct. 1710, 29 L.Ed.2d 241. See, also, *Handsome v. Rutgers University*, 445 F.Supp. 1362 (D.N.J. 1978); *Rutledge v. City of Shreveport*, 387 F.Supp. 1277 (W.D.La.1975); *Matter of Loftin*, 327 So.2d 543 (La.Ct.App.1976), writ denied, 331 So.2d 851 (La.1976); *Grimes v. Hoschler*, 12 Cal.3d 305, 115 Cal.Rptr. 625, 525 P.2d 65 (1974), certiorari denied, 420 U.S. 973, 95 S.Ct. 1364, 43 L.Ed.2d 653 (1975).[1]

In *Marshall v. District of Columbia Government*, 182 U.S.App.D.C. 105, 559 F.2d 726 (1977), a Federal Circuit Court of Appeals sustained the constitutionality of a city policy which denied an application for employment with the police force if the applicant was an adjudicated bankrupt. The court sought to distinguish *Perez*, but we reject its reasoning because the effect of the policy in that case was to frustrate the purposes of the bankruptcy act. Federal law has established the right to declare bankruptcy, and state law may not chill the exercise of that right.

However, these constitutional limitations do not preclude a court from inquiring into the bar applicant's responsibility or moral character in financial matters. The inquiry is impermissible only when the fact of bankruptcy is labeled "immoral" or "irresponsible," and admission is denied for that reason. In other words, we cannot declare bankruptcy a wrong when Federal law has declared it a right.

1. For cases holding *Perez* not applicable to private institutions or actions, see *Girardier v. Webster College*, 563 F.2d 1267 (8 Cir. 1977),

Thus, in the present case, Gahan's conduct prior to bankruptcy surrounding his financial responsibility and his default on the student loans may be considered to judge his moral character. However, the fact of his bankruptcy may not be considered, nor may his present willingness or ability to pay the loans be considered because under Federal bankruptcy law, he now has a right to not pay the loans.

### 2. *Applicant's Moral Character.*

Rule II of the Rules for Admission to the bar of the State of Minnesota states in part:

"No person shall be admitted to practice law who has not established to the satisfaction of the State Board of Law Examiners:

\*  \*  \*  \*  \*  \*

"(2) That he is a person of good moral character; \*

\*  \*  \*  \*  \*  \*

" \* Character traits that are relevant to a determination of good moral character must have a rational connection with the applicant's present fitness or capacity to practice law, and accordingly must relate to the State's legitimate interest in protecting prospective clients and the system of justice."

A requirement of good moral character has been recognized by the Supreme Court as a constitutionally · permissible condition to bar admission, provided that the Constitution is not violated in the determination of moral character. *In re Stolar*, 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971); *Baird v. Arizona*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *Konigsberg v. State Bar*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).

The Board found that petitioner did not have good moral character because of conduct surrounding his failure to repay sever-

and *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 930, n. 57 (5 Cir. 1977).

al student loans. No other discernible grounds for showing lack of good moral character—such as fraud or dishonesty—appear in the record. Consistent with the above discussion on constitutionally permissible factors, the specific question thus becomes whether petitioner showed a lack of good moral character prior to discharge in bankruptcy because he did not undertake or prepare for repayment of the student loans.

■ The conduct of a bar applicant in satisfying his financial obligations has been widely recognized as a relevant factor in assessing good moral character. See, *In re Heller*, 333 A.2d 401 (D.C.Ct.App.), certiorari denied, 423 .U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975); *In re Cheek*, 246 Or. 433, 425 P.2d 763 (1967). The failure of a person to honor his legal commitments adversely reflects on his ability to practice law, evincing a disregard for the rights of others. See, *Matter of Connor*, Ind., 358 N.E.2d 120 (1976). See, generally, Annotation, 64 A.L.R.2d 301.

The Florida court is apparently the only court to specifically consider whether a bar applicant's failure to repay his student loans demonstrates lack of good moral character so as to justify denial of admission. The Florida court has considered the issue twice, and the contrast in the cases is instructive. In the case of *Florida Bd. of Bar Examiners re G. W. L.*, 364 So.2d 454 (Fla. 1978), the applicant, G. W. L., had approximately $10,000 in student loans upon graduation from law school. As of several months before graduation, he had not obtained law-related employment. Three days before graduation, he executed a voluntary petition for bankruptcy. Approximately 7 months later, the applicant was adjudicated bankrupt and released from his debts. At approximately the same time, the applicant obtained a job as law clerk at $70 per week. He applied for admission to the Florida bar, and the Board recommended that applicant not be admitted. The Florida Supreme Court agreed with the Board, stating (364 So.2d 459):

"* * * We find that the Board had ample record evidence from which it could conclude that the principal motive of the petitioner in filing his petition for

bankruptcy was to defeat creditors who had substantially funded seven years of educational training. Whether that motive was present as the debts were incurred or was formed toward the end of his law school training, the Board could fairly conclude from the petitioner's own testimony and prior behavior that he exercised his legal right to be freed of debt by bankruptcy well before the first installments on his debt became due, with absolutely no regard for his moral responsibility to his creditors. The petitioner's admittedly legal but unjustifiably precipitous action, initiated before he had obtained the results of the July bar examination, exhausted the job market, or given his creditors an opportunity to adjust repayment schedules, indicates a lack of the moral values upon which we have a right to insist for members of the legal profession in Florida. The petitioner's course of conduct in these personal affairs raises serious questions concerning the propriety of his being a counselor to others in their legal affairs, and is rationally connected to his fitness to practice law.

\*    \*    \*    \*    \*    \*

"To foreclose any misconstruction of this decision we must emphasize that this ruling should not be interpreted to approve any general principle concerning bankruptcies nor to hold that the securing of a discharge in bankruptcy is an act inherently requiring the denial of admission to the bar. We further do not wish this decision to be construed to hold that any comparable exercise of a clear legal right will necessarily imperil bar admission."

Three justices dissented because, even though they did not condone the applicant's actions, the applicant had a Federal right to bankruptcy and therefore the court could not constitutionally deny admission on the basis of exercising that right. The majority did not address the constitutional issue or cite the *Perez* case.

In the second Florida case, *Florida Bd. of Bar Examiners re Groot*, 365 So.2d 164 (Fla.

1978), the court held that an applicant who had discharged his student loans in bankruptcy should nevertheless be admitted because the circumstances surrounding his default were justified. In distinguishing the case from *Florida Bd. of Bar Examiners re G. W. L., supra,* the court said (365 So.2d 168):

> "Unlike G. W. L., Groot was the father and legal custodian of two children born of his recently-terminated marriage. His expenses included not only his own living costs and those of his dependents, but to some degree those of his former wife. When his personal resources became exhausted, he was forced to prevail upon family members to loan him the money, to meet current living expenses while he was without a job. Thus, unlike G. W. L., Groot had suffered unusual misfortune at the time he finally secured employment, and he had a valid present need to devote his entire employment income to his current, not past, financial responsibilities. His circumstances warranted his turning to the remedy provided by federal law for persons in just such situations, and we hold that Groot's conduct under these circumstances is not morally reprehensible or indicative of a present unfitness for admission to the bar."

In these two cases, the Florida court failed to squarely address the constitutional issue of denying employment licenses on the basis of bankruptcy. We have reservations as to whether it was constitutional for the Florida court to consider the morality of any motivations for filing bankruptcy when the Federal Government has declared the bankruptcy proceeding to be legal and presumably beneficial to the welfare of the individual and society.

■ Nevertheless, the Florida cases are instructive of the judicial concern over admitting to the bar those persons who disregard the rights of others and do not pay their debts even when they are reasonably able to do so. We hold that applicants who flagrantly disregard the rights of others and default on serious financial obligations, such as student loans, are lacking in good moral character if the default is neglectful, irresponsible, and cannot be excused by a compelling hardship that is reasonably beyond the control of the applicant. Such hardships might include an unusual misfortune, a catastrophe, an overriding financial obligation, or unavoidable unemployment.

We are, under the Minnesota Constitution, entrusted with the exclusive duty to assure the high moral standards of the Minnesota bar. We have no difficulty in concluding that Federal law does not preclude us from evaluating the responsibility of a bar applicant in satisfying his or her financial obligations. This is particularly true where, as here, the obligation has the significance of $14,000 in Federally insured student loans. A student loan is entrusted to a person, and is to be repaid to creditors upon graduation when and if financially able. Moreover, repayment provides stability to the student loan program and guarantees the continuance of the program for future student needs. A flagrant disregard of this repayment responsibility by the loan recipient indicates to us a lack of moral commitment to the rights of other students and particularly the rights of creditors. Such flagrant financial irresponsibility reflects adversely on an applicant's ability to manage financial matters and reflects adversely on his commitment to the rights of others, thereby reflecting adversely on his fitness for the practice of law. It is appropriate to prevent problems from such irresponsibility by denying admission, rather than seek to remedy the problem after it occurs and victimizes a client.

Applying the above principles to this case, we conclude that Gahan's failure to satisfy his obligations on the student loans cannot be excused for some compelling hardship reasonably beyond his control. During the period prior to bankruptcy, he was employed for most of the time at an annual salary of $15,000 and then $18,000. Monthly, he grossed from $1,250 to $1,500, and he accounted for monthly expenses of approximately $500. The record indicates that his monthly payments on the loans would be approximately $175. He was healthy, single, and not subject to any unusual hardship. He was reasonably able to satisfy his legal and moral obligation to prepare for

repayment and continue repayment of his student loans. His failure to do so demonstrates lack of good moral character and reflects adversely on his ability to perform the duties of a lawyer.

Consistent with Gahan's Federal bankruptcy rights, we expressly state that our decision is in no way influenced by any assessment of Gahan's motivation in seeking bankruptcy. Nor are we interested in whether Gahan has any present willingness or ability to reaffirm the debts. We have based our decision solely on the circumstances surrounding Gahan's default on the student loans and the resulting failure to satisfy this important obligation. Gahan's subsequent conduct of obtaining discharge in bankruptcy and release from the default is of no concern to us.

The decision of the Board of Law Examiners to deny membership to the bar of the State of Minnesota is affirmed.