2010 OK 61

In the Matter of the Application for RE-
INSTATEMENT OF Jami Lynn STEW-
ART a/k/a Jami Watts, to Membership
in the Oklahoma Bar Association and to
the Roll of Attorneys.

SCBD No. 5444.

Supreme Court of Oklahoma.

Sept. 14, 2010.

Mack K. Martin, Martin Law Office, Okla-
homa City, OK, for Applicant for Reinstate-
ment.

Lorraine D. Farabow, Assistant General
Counsel, Oklahoma Bar Association, Okla-
homa City, OK, for Respondent, Oklahoma
Bar Association.

## ORDER

¶ 1 Rehearing is granted. The May 12,
2009, majority and dissenting opinions in the
above-styled matter, published at 2009 OK
29, are withdrawn and the opinion issued this
date is substituted therefor. The vote below

is on the grant of rehearing only. The vote on the substituted opinion is shown thereon.

¶2 EDMONSON, C.J., KAUGER, COLBERT, REIF, JJ., and LAVENDER, S.J., concur.

¶3 TAYLOR, V.C.J., OPALA, WATT, and WINCHESTER, JJ., dissent.

¶4 HARGRAVE, J., disqualified.

## OPINION ON REHEARING

REIF, J.:

¶1 On May 12, 2009, this Court issued an opinion that denied Jami Lynn Stewart's application to be reinstated to the practice of law. Both the General Counsel of the Oklahoma Bar Association and the Professional Responsibility Tribunal had recommended denial of Ms. Stewart's application for reinstatement.

¶2 The point of contention over Ms. Stewart's reinstatement centers on her failure to pay the tax liability that led to her suspension in 2002.[2] Ms. Stewart concedes that the tax liability has not been fully paid, but explains that the tax liability was discharged in bankruptcy in 2006.

¶3 Relying on prior cases in which reinstatement turned on payment of the tax liability that lead to suspension[3] the opinion of May 12, 2009, held that the discharge in bankruptcy "cannot be treated as tantamount to having paid the [tax] debt as did the attorneys in [the prior reinstatement cases]." The opinion tied restoration of Ms. Stewart's fitness to practice law to the fulfillment of her moral obligation to pay the tax liability, notwithstanding its discharge in bankruptcy. The dissenting opinion argued that the discharged tax liability can not be a basis to deny Ms. Stewart a license to practice law.

¶4 In her petition for rehearing, Ms. Stewart argued (as did the dissenting opinion) that refusing to restore her license based on her nonpayment of the discharged tax liability is contrary to 11 U.S.C. § 525(a),[4] and the United States Supreme Court's deci-

---

2. The circumstances surrounding Ms. Stewart's suspension in 2002 are set forth in *State ex rel. Oklahoma Bar Association v. Stewart*, 2003 OK 13, 71 P.3d 1.

3. *Matter of Reinstatement of Hardin*, 1996 OK 115, 927 P.2d 545, *Matter of Reinstatement of Crabtree*, 1990 OK 49, 793 P.2d 296, *Matter of Reinstatement of Clifton*, SCBD No. 3451, 59 O.B.J. 1632, No. 25 (June 14, 1988).

4. Protection against discriminatory treatment is found in 11 U.S.C. § 525 (2005) (emphasis added), which states:
(a) Except as provided in the Perishable Agricultural Commodities Act, 1930, the Packers and Stockyards Act, 1921, and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943, **a governmental unit may not deny, revoke, suspend, or refuse to renew a license,** permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment **against, a person that is or has been a debtor under this title** or a bankrupt **or a debtor under the Bankruptcy Act,** or another person with whom such bankrupt or debtor has been associated, **solely** because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the

case under this title, or during the case but before the debtor is granted or denied a discharge, or **has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.**
(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—
(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.
(c)(1) A governmental unit that operates a student grant or loan program and a person engaged in a business that includes the making of loans guaranteed or insured under a student loan program may not deny a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, or another person with whom the debtor or bankrupt has been associated, because the debtor or bankrupt is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commence-

sion in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Upon further consideration, we now conclude that § 525(a) precludes any consideration of a debt discharged in bankruptcy in connection with the debtor's application for a government granted license.

¶ 5 To be sure, an important state interest is served by recognizing that suspended attorneys have a moral obligation to pay any tax liability that led to their suspension. Likewise, this Court has an interest in applying such a standard fairly and consistently to achieve justice, to rehabilitate errant members of the bar and to protect the public. However, the United States Supreme Court has made it clear that such interests cannot be enforced when to do so would frustrate the purpose of the Bankruptcy Act.

¶ 6 In *Perez,* the Supreme Court said that " '(o)ne of the primary purposes of the Bankruptcy Act' is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' " 402 U.S. at 648, 91 S.Ct. 1704 (citations omitted). The Court also concluded that section 525(a) was enacted to fulfill this purpose and observed that "any state [action] which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." 402 U.S. at 652, 91 S.Ct. 1704. Suspended attorneys who obtain a bankruptcy discharge of the tax liability that led to their suspension are not excepted from the protection afforded by section 525(a), and the existence of a state interest in perpetuating such liability is not a sufficient reason to deprive such attorneys of "the full effectiveness of the federal law."

¶ 7 Aside from Ms. Stewart's nonpayment of the tax liability that led to her suspension, she has otherwise met the requirements for reinstatement. The record reflects that Ms. Stewart has demonstrated (1) appreciation for the seriousness of the misconduct that led to her suspension; (2) remorse for the harm done and the adverse impact of the misconduct on her clients, the legal profession, and the judicial system; (3) compliance with the condition of suspension to refrain from the practice of law; and (4) competence in the learning of the law. If this Court gives the bankruptcy discharge and § 525(a) "full effectiveness," then we have no further inquiry to make about the bona fides [5] of Ms. Stewart's resort to bankruptcy vis-à-vis her reinstatement to the practice of law. Not only has Ms. Stewart's inability to pay the tax liability been conclusively established and the liability extinguished, but the party to whom the liability was owed—the United States Internal Revenue Service—raised no objection to such actions by the bankruptcy court.

**THE APPLICATION FOR REINSTATEMENT IS GRANTED AND PETITIONER IS REINSTATED TO THE PRACTICE OF LAW UPON PAYMENT OF COSTS.**

¶ 8 EDMONDSON, C.J., KAUGER, COLBERT, REIF, JJ., and LAVENDER, S.J., concur.

¶ 9 TAYLOR, V.C.J., OPALA, WATT, and WINCHESTER, JJ., dissent.

¶ 10 HARGRAVE, J., disqualified.

WATT, J., with whom TAYLOR, V.C.J., OPALA and WINCHESTER, JJ. join, dissenting.

¶ 1 It is useful to note at the outset what this case is not about. It is not about wheth-

ment of a case under this title or during the pendency of the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
(2) In this section, "student loan program" means any program operated under title IV of the Higher Education Act of 1965 or a similar program operated under State or local law.

5. After closing her practice, Ms. Stewart worked for a drilling company from November 2002 to September 2003. The president of the company testified that Ms. Stewart was doing well, and had put together the company's first drilling program when she had a terrible car wreck. Her injuries included a broken ankle, a broken sternum and five broken ribs. Ms. Stewart required physical therapy for almost a year for these injuries. Medical bills for these injuries totaled just over $11,000 and were included in her bankruptcy schedules. Due to her injuries, she was out of work several months. Her physical condition also led her to another change of occupation. Viewed in the totality of the circumstances, Ms. Stewart's resort to bankruptcy was not intended as a short cut to reinstatement.

er the respondent should be held to blame for the consequences of her failure to pay a lawful debt. It is not about her moral or legal right to avail herself of the bankruptcy laws. Finally, it is not about whether this Court "condones" Stewart's prior misconduct. **It is about the respondent's fitness to practice law. By losing sight of this fact, the majority fails to focus properly on the failure of the respondent to meet financial obligations she promised this Court, the federal court, and the Internal Revenue Service (IRS) she would pay and how this failure reflects on her moral fitness to practice law.**

¶ 2 The majority welcomes the respondent, Jami Lynn Stewart (Stewart/attorney), back into the fold of the Oklahoma Bar Association. It declares the respondent to be of moral character [1] sufficient to practice law in the State of Oklahoma, **an individual who: was originally disciplined for being convicted of income tax evasion; charged bankruptcy clients unauthorized fees to the tune of $30,000.00; made misrepresentations to the Bankruptcy Court regarding the charging of fees; utilized her promise to pay her back taxes to the Internal Revenue Service as a tool to obtain a reduced discipline from this Court; rather than paying her just debt to the federal government, discharged income taxes and penalties due and owing; and now appears before this Court claiming that restitution was made through lawful means and arguing that we should not look to the "discharge" as an indicator of her moral character.**

¶ 3 The majority relies upon the United States Supreme Court's opinion in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) for the proposition that we must ignore the respondent's bankruptcy discharge in considering whether her name should be again added to the roll of attor-

neys. In so doing, it ignores the expressed legislative intent of the United States Congress and gives an overly broad interpretation to an opinion both factually and legally distinguishable from the question presented here: whether the respondent's character is such that she should be readmitted to the practice of law in Oklahoma. **Because the respondent has not demonstrated evidence more convincing of her qualifications to practice law than one seeking admission for the first time,[2] I dissent.**

## FACTS RELEVANT TO REINSTATEMENT

¶ 4 The majority does not present a detailed factual outline of what brought about Stewart's suspension from the practice of law for four years, **a suspension tantamount to disbarment.[3]** On September 20, 2002, we entered an order of interim suspension. The suspension arose from Watts' **criminal conviction** on May 21, 2002 in the United States District Court for the Western District of Oklahoma **for failure to file her 1996 federal income tax return and for contempt for wilfully failing to disclose charges of $30,000.00 in fees in bankruptcy proceedings.** In addition, the respondent was suspended from the practice of law in the United States Bankruptcy Court for the Western District of Oklahoma and in the United States Bankruptcy Court for the Eastern District of Texas.

¶ 5 Stewart **pled guilty to charges of income tax evasion and to contempt charges related to failing to disclose fees collected in numerous bankruptcy proceedings.** She was placed on probation for four years, ordered confined in her home for 180 days, and directed to complete 104 hours of community service. Having met the conditions of her probation, Stewart was successful in having her probation terminated on October 1, 2004, approximately 16 months earlier than origi-

---

1. Rule 11.5, Rules Governing Disciplinary Proceedings, see note 2, infra, requires a "specific finding" on the issue of an attorney's "good moral character" when seeking readmittance to the Bar Association.

2. Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *In re*

*Reinstatement of Fraley*, 2005 OK 39, ¶ 37, 115 P.3d 842.

3. Rule 11, 1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, *Oklahoma Bar Ass'n v. Pacenza (Pacenza I)*, 2006 OK 23, ¶ 2, 136 P.3d 616.

nally scheduled. **We can only assume that, at that time, she was meeting her obligation to the IRS as the making of such payments was a condition of her probation.**[4]

¶ 6 On February 11, 2003, we suspended the attorney for four years retroactive to the date of the interim suspension order. A consideration taken into account in *State ex rel. Oklahoma Bar Ass'n v. Stewart (Stewart I)*, 2003 OK 13, 71 P.3d 1, in entering the four-year suspension rather than disbarment was the respondent's agreement with the IRS to pay her tax debt of approximately $16,566.00.

¶ 7 It is apparent that the respondent did not take her promise to repay her tax debt seriously either when it was made to the IRS, to the federal court at the time her probation was entered, or to this Court. Almost immediately after having filed a bankruptcy petition seeking to discharge a tax liability of between $200,000.00 and $500,000.00,[5] the respondent filed a petition for reinstatement. The bankruptcy proceeding was filed in January of 2007, well after the date the respondent was successful in getting her probation terminated. Stewart withdrew the application upon advice of the General Counsel's Office that other attorneys not having satisfied tax obligations had been denied reinstatement.

¶ 8 On March 19, 2007, Stewart received her discharge in bankruptcy. She filed a second petition for reinstatement on September 8, 2008 pursuant to Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. The trial panel determined that Stewart had not met the burden of proof for reinstatement and recommended that reinstatement be denied and costs of $1,015.53 be imposed. **Several factors were of specific importance to the trial panel in making its recommendation that reinstatement be withheld. It found it "difficult to make a faithful assessment of Stewart's testimony in relation to her awareness of her past conduct" and "moral character."**[6] **The trial panel was not convinced that Stewart was yet fully aware of the seriousness of her misconduct and the disrepute she had brought on the profession. Rather than recognizing the seriousness of her criminal conviction, "she gave excuses and made rationalizations" causing the trial panel concern. Stewart was "defensive and evasive" in answering questions before the trial panel.**[7] **Finally, the trial panel found troubling Stewart's representation that restitution had been made fully by her discharge of a debt of approximate-**

---

**4.** The Bar Association's exhibit 3, filed on August 6, 2002, in the Chief Justice's Office contains the probationary terms imposed upon Stewart. It provides in pertinent part:
  "... The defendant shall cooperate and comply with the Internal Revenue Service in the compilation and payment of all federal income tax due and owing...."

**5.** This seems a very large figure considering that Stewart indicated in *State ex rel. Oklahoma Bar Ass'n v. Stewart (Stewart I)*, 2003 OK 13, 71 P.3d 1, that her obligation to the federal government was something less than $20,000.00. Nevertheless, Stewart's testimony is recorded in the Transcript of Reinstatement Hearing, December 5, 2008, Jami Lynn Steward testifying in pertinent part at pp. 75–76:
  "... Q. Let me just ask, one of the terms set forth in that document was that you were to— 'The defendant shall cooperate and comply with the Internal Revenue Service in the compilation and payment of all federal income tax due and owing.'
  Do you recall how much you owed, besides the 1996 that you didn't file?

A. I know that the amount I filed bankruptcy on was inflated because I couldn't get the exact amount I owed and I also know included penalty and interest, but it was several hundred—was maybe a couple hundred thousand dollars.
Q. Because you hadn't filed for several years.
A. Yes, and I think even the couple hundred thousand included penalty and interest which can increase the debt quite a bit.
Q. Right. The amount that you discharged in your 2007—with the court—the bankruptcy court actually discharged your debt was well over—it was over 500,000 though, correct?
A. That's the amount we put, because we could not get the amount that I owed from the IRS, so we inflated the amounts so that all of the debt would be discharged...."

**6.** Trial panel report, filed January 30, 2009, see p. 7.

**7.** Trial panel report, filed January 30, 2009, see pp. 7–8.

ly $300,000.00 which was the subject of a tax lien. It observed that "notwithstanding Stewart's *legal* discharge of her tax debt, she made no comment to indicate that she had a sense of *moral* obligation to pay her income taxes."

### a) Congress did not intend to bar a licensing Court from considering the circumstances surrounding bankruptcy.

¶ 9 The legislative history of the Bankruptcy Act indicates that Congress intended to bar a *per se* rule which would make filing in bankruptcy an automatic bar to a license or similar grant. Congress did not intend to preclude examination of the circumstances surrounding bankruptcy.

¶ 10 See, H.R.Rep. No. 95–595, 95th Cong. 1st Session at 164 (1977), reprinted in 5 U.S.Code Cong. & Admin.News, 95th Cong.2d Sess. 5787, 5963, 6126 (1978) providing in pertinent part:

... The prohibition does not extend so far as to prohibit examination of the factors surrounding the bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts, or the examination of prospective financial condition or managerial ability. The purpose of the section is to prevent automatic reaction against an individual for availing himself of the protection of the bankruptcy laws.... (I)n those cases where the causes of bankruptcy are intimately connected with the license, grant or employment in question, an examination into the circumstances surrounding the bankruptcy will permit governmental units to pursue appropriate regulatory policies and take appropriate action without running afoul of bankruptcy policy."

### b) *Perez v. Campbell* is factually and legally distinguishable.

¶ 11 In *Perez,* the issue was identified by the Supreme Court as whether a state statute that protected judgment creditors from "financially irresponsible persons" conflicted with a federal statute that gives discharged debtors a new start "unhampered by the pressure and discouragement of preexisting debt." The Court held that a **specific provision** in Arizona's statutory scheme providing that a discharge in bankruptcy would not relieve the individual from having a driver's license suspended if the individual failed to satisfy a judgment entered against him in an action arising from the operation of a motor vehicle was unconstitutional. The *Perez* Court found the provision invalid under the supremacy clause of the United States Constitution as conflicting with the mandate of the Bankruptcy Act providing that receipt of a discharge in bankruptcy fully discharged all but certain specified judgments.

¶ 12 *Perez* differs factually from the situation presented here on three significant grounds. First, although this Court is certainly concerned with the fiscal responsibility of those attorneys it licenses, the primary purpose of a reinstatement proceeding is not to protect judgment creditors from "financially irresponsible persons." It is to protect the public from being harmed by unscrupulous individuals holding a license to practice law. Second, the issue presented is not whether an individual should be allowed to maintain a license to operate a vehicle on the public roads and highways. Rather, it is to determine whether Stewart has the moral character necessary of one in the legal profession to undertake the representation of clients. Third, there is no statutory provision or disciplinary rule, as existed in *Perez,* which provides specifically that a discharge of debt in bankruptcy will *ipso facto* prohibit the suspended or disbarred attorney from returning to the practice of law.

¶ 13 A number of decisions from sister states have made it clear that ***Perez*** **stands as no bar to our inquiry into Stewart's discharge in bankruptcy to the extent that it reflects on her good moral character or lack thereof.**[8] In analyzing *Perez* in *Matter of Anonymous,* 74 N.Y.2d 938, 550 N.Y.S.2d 270, 549 N.E.2d 472 (1989), the New York court held that the denial of a license to practice law did not violate the federal stat-

---

8. *Application of Gahan,* 279 N.W.2d 826, 4 A.L.R.4th 426 (Minn.1979) [Recognizing that the conduct of a bar applicant in satisfying his finan-cial obligations has been widely recognized as a relevant factor in assessing good moral character.]

ute prohibiting governmental units from refusing to grant licenses solely because the applicant is or has been a bankruptcy debtor. In so doing, it recognized that *Perez* was intended to protect debtors from being denied governmentally granted privileges because of the bankruptcy. Nevertheless, it looked to the legislative history of the bankruptcy code and determined that Congress' concern was that discrimination against debtors, based upon the fact of bankruptcy alone, should not exist. Nevertheless, **it also acknowledged that the statutory scheme was not intended to shield debtors from reasonable inquiries about their ability to manage financial matters when the ability to do so is related to their fitness for the license sought.**

¶ 14 The New York court recognized, as this Court has done on numerous occasions, that the mishandling of financial affairs, reflects on an attorney's character. It found that where the determination of unfitness does not rest on the fact of bankruptcy **but on conduct reasonably viewed as incompatible with the lawyer's duties and responsibilities as a member of the Bar,** neither the Bankruptcy Code nor *Perez* prohibit the refusal to allow licensure.

¶ 15 In *Matter of Application for Reinstatement of Gunter,* 344 Or. 368, 182 P.3d 187 (2008), reconsideration allowed to correct factual statements without alteration of conclusion of opinion, 344 Or. 540, 186 P.3d 286 (2008),[9] the Oregon Supreme Court has taken the same position on attorney licensure as did the New York court in its analysis of the bankruptcy code. It held that **the federal statutory scheme did not prohibit examination of the circumstances surrounding bankruptcy, as those circumstances illustrate the judgment of the applicant for admission to the Bar in handling serious financial obligations.** Like the New York

court, the Oregon tribunal determined **Congress intended that where bankruptcy filings were intimately connected with the license, grant, or employment in question, an examination into the circumstances surrounding the bankruptcy would be allowed, giving governmental units the authority to pursue regulatory policies without running afoul of bankruptcy policy.** It determined that the filing of bankruptcy can demonstrate a "selfish exercise of legal rights and a disregard of moral responsibilities." [10]

¶ 16 In *Hippard v. State Bar of California,* 49 Cal.3d 1084, 264 Cal.Rptr. 684, 782 P.2d 1140, the petitioner contended that he satisfied his burden of proving rehabilitation, and that the State Bar erred in concluding he had made insufficient efforts to repay clients or the State Bar Client Security Fund. He maintained, as does Stewart here, that the denial of reinstatement based on his failure to repay debts discharged in bankruptcy in the absence of a clear showing of financial inability to do so undermined the purpose of the bankruptcy laws.

¶ 17 The California Court found the argument unpersuasive noting that the purpose of attorney discipline was to protect the public from specified professional misconduct and at the same time rehabilitate the attorney. It determined that restitution was not imposed solely because the attorney failed to pay a debt but instead sought relief in bankruptcy. Therefore, evaluation of the debt as an indication of character did not violate the bankruptcy laws. The *Hippard* Court held that consideration of the efforts to pay debts due and owing should be considered in the evaluation of a petition for reinstatement as an indicator in the steps taken towards rehabilitation.

9. See also, *Matter of the Application of Taylor,* 293 Or. 285, 647 P.2d 462 (1982) [Bankruptcy Act did not prohibit examination of circumstances surrounding bankruptcy, as these circumstances illustrate judgment of the applicant for admission to bar in handling serious financial obligations.].

10. The Oregon Court did leave room for consideration of whether the filing arose from an ex-

traordinary hardship. *Matter of the Application for Reinstatement of Gunter,* 344 Or. 368, 182 P.3d 187 (2008). Although there is little doubt that Stewart suffered a number of personal crises after she was suspended, at the time the tax obligations were imposed, she was making more than enough to have satisfied her tax obligations. Rather than doing so, she simply did not file and was convicted of the crime of tax evasion.

¶ 18 The Minnesota Supreme Court was faced, in *Application of Gahan*, 279 N.W.2d 826, 4 A.L.R.4th 426 (Minn.1979), with the question of whether an applicant for admission to the Bar Association could be denied participation for his failure to repay several student loans under the Supreme Court's decision in *Perez*. The Minnesota Court acknowledged, as has this Court on countless occasions, that an applicant's conduct in satisfying his financial obligations has been widely recognized as a relevant factor in assessing good moral character. It determined that *Perez* did not stand as a bar to it considering evidence of the applicant's good moral character prior to discharge on grounds that there was no undertaking to repay student loans. It went on to state that **the applicant could not rely on an argument that his failure to repay the debt related to some compelling hardship reasonably beyond control, when the applicant like Stewart here, was making a salary sufficient to have retired the debt during the period prior to bankruptcy.**[11]

¶ 19 Florida's highest Court took the same position as that espoused in *Gahan* when faced with the question of whether an applicant for admission to the Bar Association could be denied under *Perez* when bankruptcy was sought to defeat creditors.[12] It held that consideration of an individuals "good moral character" extended to conduct which would cause reasonable persons to have substantial doubts about an individual's honesty, fairness, and respect for rights of others and for laws of the state and nation. It refused admission to the applicant who had admittedly exercised a legal right to be freed of debts through bankruptcy but decried the individual's failure to recognize his moral obligation of repayment.[13]

### c) Reinstatement should be denied because of the lack of respondent's good moral character.

¶ 20 The majority opinion in Stewart's reinstatement request makes it clear that the fact of filing of the bankruptcy is not, in and of itself, the reason for denying reinstatement. It provides in pertinent part at ¶¶ 24–28:

¶ 24 The dissent would allow reinstatement based on the premise that a failure to allow Stewart to return to the practice of law based solely on her failure to meet her federal tax obligations violates concepts of federal constitutional principles. It is significant to note that the constitutional argument is raised *sua sponte* and was not relied upon by the attorney as a basis for her reinstatement petition. Furthermore, the dissent's analysis oversimplifies the decision to deny reinstatement.

¶ 25 Reinstatement is denied on the basis of Stewart's failure to present clear and convincing evidence that, if readmitted, her conduct would conform to the high standards required of a member of the Bar

---

11. Stewart undoubtedly suffered financial and physical setbacks **after suspension. There is no evidence that, at the time she allowed her taxes to become in arrears, she was making insufficient income to have taken care of the lawful obligation to pay the same.**

12. *Re: G.W.L.*, 364 So.2d 454 (Fla.1978).

13. See also, *In re Baker & Drake, Inc.*, 35 F.3d 1348 (9th Cir.1994) [Bankruptcy Act did not implicitly preempt regulation of Nevada's regulations concerning financial responsibility in the leasing of taxi cabs. The fact that a particular debtor's reorganization is made more difficult because of compliance with otherwise valid state regulation was not a sufficient basis to invoke preemption.]; *Marshall v. District of Columbia Government*, 559 F.2d 726, (D.C.Cir.1977) [Bankruptcy Act does not prohibit employers from using the fact of bankruptcy in considering whether the past record of a job applicant merits his consideration for employment.]; *Detz v. Hoo-*

*ver*, 539 F.Supp. 532 (E.D.Penn.1982) [In deciding whether to hire a policy officer, local governments may properly consider the fact that an applicant who has sought protection under Bankruptcy Act has been unable to manage his financial affairs.]; *Wright v. Malloy*, 373 F.Supp. 1011 (D.Vt.1974), *affirmed*, 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974) [Regulation of the license to operate a vehicle did not violate Bankruptcy Act where it was designed for the financial protection of the general public.]; *Bay Park One Co. v. Dabney*, 3 B.R. 719 (E.D.N.Y. 1980) [Fresh start allowed by Bankruptcy Act did not relieve individual of every conceivable disability incurred as a result of bankruptcy or inconvenience encountered while starting over.]; *Petition of Rhode Island Bar Ass'n*, 118 R.I. 489, 374 A.2d 802 (1977) [Bar member who discharged as a "debt" his association dues was not excused from payment of the licensing fee.].

Association.[14] Stewart's omission in meeting her monetary obligations to the federal government is a reflection upon her character in that it demonstrates her failure to understand that the general public, the judiciary, and this Court must be able to rely upon her representations.

¶ 26 In *Stewart I*, the attorney argued that her misconduct called for either a public censure or, at most, a six month suspension. At that time Stewart had been suspended or disbarred in six jurisdictions: the United States Bankruptcy Court for the Western District of Oklahoma, the United States Bankruptcy Court for the Eastern District of Texas, the United States District Courts for the Eastern District, the Northern District, and the Southern District of Texas, and from the United States District Court for the Western District of Oklahoma. Stewart had also been convicted for contempt for violating the United States Code involving the overcharging of clients for fees and the failure to report the collection of such fees to the respective bankruptcy courts. She admitted failing to pay her tax obligations for at least two years. Most instructive is the fact that **one factor this Court considered in imposing a four-year suspension rather than disbarring the attorney was the fact that Stewart had an agreement with the Internal Revenue Service to pay her tax debt. The same agreement for repayment was a condition of the attorney's probation.**

¶ 27 The decision that the attorney does not possess the character necessary for reinstatement is not based merely on the failure to repay her debt. It encompasses a character flaw related to her promise to pay. If Stewart cannot be relied upon to meet her contractual duties to the federal government, this Court has no assurance that she will carry out promises entered in with regard to her clients, other attorneys, or the courts in which she might appear.

¶ 28 Another factor which causes this Court pause in allowing reinstatement is the attorney's failure to realize that her prior conduct is relevant to a determination of her current good character. Before the trial panel, the attorney testified that she did not believe that the reinstatement proceedings should encompass a "retrial of the original conduct." [15] In her reply brief, filed on March 11, 2008, the attorney argued that "due to claim preclusion (res judicata) it is inappropriate to re-litigate the original offense in this case." Stewart makes this argument despite a long line of Oklahoma jurisprudence making it clear that the seriousness of the original misconduct is one factor to be considered in any reinstatement proceeding. [Footnotes omitted. Emphasis in original.]

## CONCLUSION

¶ 21 This Court is entrusted with the exclusive duty to assure the high moral standards of the Oklahoma Bar Association and its members. Unlike my colleagues in the majority, I have no difficulty in concluding that federal law does not preclude us from evaluating the responsibility of the respondent to undertake the payment of a legally imposed debt.[16]

¶ 22 *Perez* presents no bar to determinations that circumstances surrounding the filing of a bankruptcy petition may be considered in situations where the professional licensure of an individual may implicate the duty to manage money judiciously or where the filing may reflect character flaws of the applicant. This is precisely what the Court did in refusing originally to allow Stewart's reinstatement. Therefore, I dissent to the grant of rehearing.

¶ 23 As I cast my vote, I am saddened. The majority has abdicated its judicial responsibility to protect the public. I am left

---

**14.** Rule 11.4, Rules Governing Disciplinary Proceedings, see note 2, supra; *Matter of Reinstatement of Fraley*, see note 2, supra.

**15.** Transcript of Reinstatement Hearing, December 5, 2008, Jami Lynn Stewart testifying at p. 102.

**16.** *Application of Gahan*, 279 N.W.2d 826, 4 A.L.R.4th 426 (Minn.1979).

wondering whether it will now allow the reinstatement of: an individual convicted of the willful filing of false individual tax returns; [17] an attorney convicted of felony conspiracy in connection with acts intended to defraud creditors, including the IRS; [18] an attorney conspiring to defraud the United States by concealing taxable income; [19] an attorney who discharged a debt in bankruptcy which caused significant economic harm to his clients where such conduct had previously been viewed as dishonest, fraudulent, deceitful and misleading and had caused embarrassment to this Court and an undermining of public confidence in the Bar Association and it members; [20] an attorney who failed to pay taxes from 1990 through 1994 demonstrating his lack of character to support reinstatement; [21] or an attorney who was suspended following conviction for making and subscribing a false tax return and attempting to evade and defeat responsibility to pay income taxes.[22] Were I any of the attorneys disciplined in these cases, I would look at the majority's pronouncement as a statement that "all sins are forgiven" and be encouraged to prepare an application for reinstatement based on the majority's unexplainable lax strictures in this cause. To allow reinstatement of the respondent would, at best, undermine our absolute constitutional authority to regulate the practice of law or, at worst, violate the oath of office which each of us has sworn to uphold.

---

17. *Matter of Reinstatement of Smith*, 1994 OK 19, 871 P.2d 426.

18. *State ex rel. Oklahoma Bar Ass'n v. Shofner*, 2002 OK 84, 60 P.3d 1024.

19. *State ex rel. Oklahoma Bar Ass'n v. Hornung*, 1991 OK 56, 813 P.2d 1041.

20. *Matter of Reinstatement of Pacenza (Pacenza II)*, 2009 OK 9, 204 P.3d 58.

21. *Matter of Reinstatement of Hardin*, 1996 OK 115, 927 P.2d 545.

22. *State ex rel. Oklahoma Bar Ass'n v. Samara*, 1984 OK 32, 683 P.2d 979.