2012 OK 12

**In the Matter of the REINSTATEMENT OF Larry D. WAGENER to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**No. SCBD–5749.**

Supreme Court of Oklahoma.

Feb. 14, 2012.

Larry D. Wagener, Hulbert, Oklahoma, Petitioner, Pro Se.

M. Gina Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent, Oklahoma Bar Association.

EDMONDSON, J.

¶ 1 On May 9, 2011, Larry D. Wagener, OBA # 15613, filed a petition for reinstatement to the Oklahoma Bar Association as an active member. A hearing before the Trial Panel of the Professional Responsibility Tribunal was held on August 29, 2011, and the trial panel unanimously recommended that petitioner be reinstated. The Oklahoma Bar Association joined in the recommendation. The petitioner filed a brief in this Court in support of his petition for reinstatement and the OBA waived filing an answer brief. Upon de novo review, we find that the petitioner has shown by clear and convincing evidence that he has met the requirements for reinstatement.

¶ 2 The petitioner currently resides in Hulbert, Oklahoma. He was admitted to the Oklahoma Bar Association on April 30, 1993, and practiced law in the State of Oklahoma from June 1, 1993, until he resigned pending disciplinary proceedings on November 1, 2005. At the time of his resignation, the petitioner was current with his OBA dues and his mandatory CLE (MCLE) requirements. The petitioner will be responsible for dues and MCLE requirements for 2012.

¶ 3 When he resigned from the Oklahoma Bar Association on November 1, 2005, a formal complaint was pending in SCBD 5080, alleging five counts of misconduct. Three counts alleged neglect of clients and failure to timely inform them of his suspension. The fourth count alleged unauthorized practice of law on Wagener's part during his suspension when he continued to display a large sign in front of his law office that advertised his services as an attorney. The fifth count alleged that he failed to comply with the Rule 9.1, RGDP, requiring notification of clients of his suspension. Also pend-

ing were two grievances, DC 05–15 and DC 05–248, which were under investigation based on allegations of neglect of two clients and failure to timely respond. *State ex rel. Oklahoma Bar Ass'n v. Wagener*, 2005 OK 80, 127 P.3d 598.

¶ 4 The petitioner had been previously disciplined. On January 22, 2002, he was suspended from the practice of law for sixty (60) days for client neglect, failure to respond timely to the Oklahoma Bar Association, and failure to safekeep a client's property. *State ex rel. Oklahoma Bar Ass'n v. Wagener*, 2002 OK 4, 48 P.3d 771. On October 4, 2002, Wagener received a private reprimand from the Professional Responsibility Commission in OBAD # 1551, based upon grievances alleging the unauthorized practice of law and failure to timely notify clients of his suspension.

¶ 5 By order dated January 18, 2005, the petitioner was suspended for six months based on one count of professional misconduct for failure to file a petition in error in an appeal in a criminal matter, for misrepresenting the status of the case to the client and failing to inform him when the appeal was dismissed. The misconduct occurred during the same time frame as the misconduct that resulted in the sixty-day suspension, but was unknown to the OBA at that time. *State ex rel. Oklahoma Bar Ass'n v. Wagener*, 2005 OK 3, 107 P.3d 567. Some of the grievances pending when he resigned occurred during this six-month period of suspension.

¶ 6 The petitioner testified that he was a sole-practitioner who took on more cases than he could adequately handle. He handled primarily criminal defense matters and, because he speaks Spanish, he took on a large number of cases representing Hispanics, many of which were pro bono. The petitioner realizes that he overloaded himself and was unable to manage his practice. He

worked long hours and was affected physically by the stress of his practice. He now recognizes that he should have refused to take on so many cases, and that he should have gotten help. When questioned as to his reason for resigning, the petitioner stated:

> "There was just so much. I had two grievances pending and I was stressed out and I realized I wasn't doing as well as I should be doing and I resigned." Tr. pp. 73–74.

¶ 7 The petitioner expressed remorse for his conduct and the disrepute that he brought on the profession. He fully accepts responsibility for his failures. He states that he has matured a great deal and has realized that he cannot help everybody. He is now living a more slow-paced life and is raising ducks, chickens and pheasants at his home on Lake Fort Gibson and is enjoying hobbies such as fishing. To ensure that he keeps his practice under control he plans to limit his law practice to part-time, if readmitted. He testified that he would like to practice immigration law and that he will not undertake major criminal cases. He will look to other attorneys and to the OBA for help when needed. He intends to do some *pro bono* work for elderly and disabled members of the Cherokee Nation. He would like to be of help to other lawyers that find themselves in the same position. He realizes the seriousness of his misconduct and the consequences of his decision to resign from the bar.

¶ 8 The petitioner has personal debts from the time he was practicing law and from his periods of unemployment since his resignation. The petitioner's debts, both paid and unpaid, were disclosed to the Bar. The debts include judgments that are no longer legally enforceable, but which the petitioner intends to pay in full.[1] Although he could have discharged many of his debts by filing bankruptcy, he testified that he did not and that he is committed to paying off his debts.[2]

---

1. A former client received a judgment on August 1, 2003, in the amount of $25,288.00, and a court reporting firm received a judgment in SC 2003–19332 for $621.00, and neither judgment has been renewed. The petitioner is making monthly payments to the IRS on an indebtedness of $6,344.00, and has a student loan indebtedness in excess of $25,000.00. Mr. Wagener re-

ported to the OBA that he has not made a payment on the student loan since June 10, 2010, when he lost his job at a nursery. The petitioner has a couple of consumer debts that total less than $600.00. The petitioner timely filed his state and federal income tax returns. Tr. p. 85.

2. In *Matter of Reinstatement of Stewart*, 2010 OK 61, 240 P.3d 666, we allowed reinstatement of

The OBA's general counsel testified that although the debts were initially of concern, investigation revealed that none of the debt was the result of fraud and that they were legitimate business debts which Wagener has either repaid or is attempting to repay. It is to Wagener's credit that he has chosen to honor his moral obligation to pay his debts, even those that are no longer legally enforceable.

¶ 9 The petitioner presented affidavits from the court clerks in Tulsa and Cherokee counties attesting that he had not practiced law during his suspension. The petitioner's witnesses confirmed this and the Bar did not find any evidence that he had done so. After his resignation the petitioner was employed for three months as an installer for Direct TV in 2006, and was employed from March 2007 until June 2010 for Tri–B Nursery in Hulbert, Oklahoma, first as receiving manager and then as purchasing manager. Otherwise, the petitioner has been unemployed, but is developing some property to sell that he owns on Ft. Gibson Lake.

¶ 10 The petitioner has continued to study the law regularly since his resignation. His evidence reflects his attendance of numerous CLE courses and lectures, as well as viewing a large number of video recordings on legal topics and reading the Bar Journal regularly.

¶ 11 The petitioner's character witnesses were: Andrew Choate, a Bixby police detective; Mark Matheson, an attorney with whom the petitioner once shared an office; Angie Ena, a co-employee at Tri–B Nursery; and Doris Vernon, the petitioner's companion of more than ten years. Their testimony was favorable to the petitioner's good moral character and his abstaining from the practice of law since his resignation.

¶ 12 Petitioner's reinstatement is governed by 5 O.S.2011, ch.1, app.1, Article II, section 2(d), which requires compliance with Rule 11.1 through Rule 11.7 of the Rules Governing Disciplinary Proceedings, 5 O.S.2011, ch. 1, app. 1–A. The petitioner has met the requisite steps for readmission and the OBA presented no evidence to the contrary. The OBA determined that the petitioner substantially complied with Rule 9.1, even though the affidavit was filed only a few months prior to this reinstatement petition.[3] See *Matter of Reinstatement of Elias,* 1988 OK 86 ¶ 14, 759 P.2d 1021 (intent of Rule 9.1 was served although there was not literal compliance with the rule). The Trial Panel of the Professional Responsibility Tribunal observed that the petitioner has undertaken the steps to be reinstated despite his personal financial setbacks, including a fire that completely destroyed his home. The Bar investigator testified that he interviewed the petitioner's references and they did not hesitate to recommend his reinstatement. The Bar investigator testified that no one came forward to object to petitioner's reinstatement. The petitioner was fully investigated by the Bar and cooperated fully in the investigation. He has realized the seriousness of his misconduct and has expressed remorse for the harm done to his clients and the discredit brought on the legal profession. The petitioner has recognized the errors of judgment made during his practice of law and has formulated how to manage his law practice if reinstated. The petitioner places great value on his law license and his continued learning in the law reflects his commitment to reinstatement. The petitioner has shown that he is presently possessed of the moral character to indicate that he will conform to the high standards of conduct required of a member of the Oklahoma Bar Association.

¶ 13 The petitioner has agreed to pay the fees and expenses of investigation in processing his petition for reinstatement and the

Jami Lynn Stewart, even though she had not paid the tax liability that led to her suspension from the practice of law for four years. She discharged the tax liability in bankruptcy prior to her application for reinstatement. See also *Matter of Reinstatement of Clifton,* 1990 OK 15, 787 P.2d 862.

**3.** The petitioner filed a petition for reinstatement in 2010, but had not filed the affidavit required by Rule 9.1, or reimbursed the Client Security Fund at that time. The petitioner was permitted to withdraw his petition and he then complied with all requirements. The petitioner testified that he gave all clients the required notice following his six-month suspension in 2005, and that he had no clients left to notify at the time of his resignation.

Oklahoma Bar Association has filed an application to assess costs in the amount of $1,250.35.

¶ 14 Upon de novo consideration of the evidence, as required in a reinstatement proceeding, we find that evidence is clear and convincing that the petitioner has not engaged in the unauthorized practice of law, that he possesses the competency and learning in the law required for reinstatement to the Oklahoma Bar Association, and that he possesses the good moral character that would entitle him to be reinstated to the Oklahoma Bar Association.

¶ 15 **IT IS THEREFORE ORDERED** that the petition of Larry D. Wagener for reinstatement to active membership in the Oklahoma Bar Association be granted, effective upon the payment of the costs of this proceeding in the amount of $1,250.35.

**THE PETITION FOR REINSTATEMENT IS GRANTED AND PETITIONER IS REINSTATED TO THE PRACTICE OF LAW UPON PAYMENT OF COSTS.**

¶ 16 COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, GURICH, JJ., Concur.

¶ 17 TAYLOR, C.J. and COMBS, J., Dissent.